**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:.

**CREATIVE DESPERATION INC.,**                    **CASE N). 08-19067-JKO**
**a/k/a PETER LETTERESE &**                       **Chapter 7**
**ASSOCIATES, INC.,**

                    **Debtor.**
_____/    **Adv. Case No._____**

**MARIKA TOLZ, AS CHAPTER 7 TRUSTEE**
**FOR CREATIVE DESPERATION, INC.**

            **Plaintiffs,**

**v.**

**MGSI, INC. a/k/a MGSI-KARAS, a Delaware**
**Corporation, THOMAS JOHN KARAS,**
**BARBARA FAWCETT F/K/A BARBARA**
**LETTERESE, RAMONA LETTERESE,**
**CHARLES D. FRANKEN and CHARLES D.**
**FRANKEN, P.A., a Florida professional association,**

            **Defendant(s)**
_____/

**COMPLAINT FOR DECLARATORY RELIEF, FOR TEMPORARY**
**AND PERMANENT INJUNCTIVE RELIEF, FOR AVOIDANCE**
**OF TRANSFERS OF ESTATE PROPERTY AND FOR DAMAGES**

Plaintiff, **MARIKA TOLZ**, as Chapter 7 Trustee of the Bankruptcy Estate of Creative Desperation, Inc. sues Defendants, MGSI, Inc., Thomas John Karas, Barbara Fawcett f/k/a Barbara Letterese, Ramona Letterese, Charles D. Fraken and Charles D. Franken, P.A. (collectively, the "Defendants") and states, as follows:

**INTRODUCTION**

This is a Complaint seeking declaratory relief with respect to property of the estate of the Debtor, Creative Desperation, Inc., and its predecessor, Peter Letterese and Associates, Inc. ("CDI" or "Debtor") including, but not limited to, the ownership of a consulting business and related assets, litigation claims, intellectual property rights in certain literary works and enforcement thereto, together with all revenues derived from these assets and any other interests

deemed property of the estate (such assets shall be referred to collectively as the "CDI Assets"). This Complaint also seeks injunctive relief to preclude and enjoin third-parties, including the named Defendants, from asserting any legal, beneficial and/or equitable ownership, dominion and control over the CDI Assets and enjoining the transfer of such rights and interests until such time as this Court may determine the nature, extent and priority of the Trustee's ownership in and to those rights on behalf of the estate. Moreover, the Complaint seeks to avoid purported transfers of the CDI Assets that may have occurred prior to the Petition Date or subsequent to the Petition Date. Finally, the Trustee seeks the recovery of damages for injuries caused to by the Defendants to the Debtor and the estate both prior to and after the Petition Date.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157(a) and 1334(a).

2.      This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. §157(b)(2)(A) and (I). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157(a) and 1334(a).

3.·     Venue is proper in this Court pursuant to 28 U.S.C. §§1409(a).

## PARTIES

4.      Plaintiff, Marika Tolz ("Trustee" or "Plaintiff") is the duly appointed and acting Chapter 7 Trustee for the bankruptcy estate of Creative Desperation, Inc. ("CDI"). The Trustee was appointed by direction of the United States Trustee's office on September 9, 2008.

5.      Defendant, MGSI, Inc. a/k/a MGSIKARAS, Inc. ("MGSI") is a corporation organized and existing under the laws of the State of Delaware. MGSI is the purported transferee of the CDI Assets, intellectual property rights, businesses and other assets owned and formerly operated by CDI, which are the subject of this action.

6.      Defendant, Ramona Letterese ("R. Letterese") is the present wife of Mr. Letterese and is a resident of the State of Florida.

7.      Defendant, Barbara Fawcett f/k/a Barbara Letterese ("Fawcett") is a 50% shareholder of CDI and is the former wife of Mr. Letterese and is a resident of the State of Florida.

8.      The Defendant, Thomas John Karas ("Karas) is an affiliate and/or employee or insider of CDI and/or P. Letterese. Upon information and belief, Karas is a resident of the state

of Michigan, but has conducted business or committed tortious acts in the Southern District of Florida

9.      Non-Party, Peter Letterese ("P. Letterese" or "Letterese")[1] is a 50% shareholder of CDI and a resident of the State of Florida. At all times material, Letterese has directed and controlled all actions taken by CDI prior to and after the Petition Date until conversion of the CDI's Chapter 11 case to Chapter 7.

10.     Charles D. Franken ("Attorney Franken"), is an attorney licensed to practice law in the State of Florida, and was formerly counsel for the Debtor

11.     Charles D. Franken, P.A. ("Franken, P.A.") is a professional association organized and existed under the laws of the State of Florida.

## FACTS RELEVANT TO CLAIMS

### A.    *The Intellectual Property Rights - Literary works of Les Dane.*

12.     For the years prior to the Petition Date, CDI engaged in the business, among other things, of providing managerial, marketing and business consulting services specifically designed for and targeting dental practices throughout the United States from which it derived substantial revenues (the "Consulting Business"), constituting part of the CDI Assets.

13.     The CDI Assets which are the subject matter of this Complaint also comprise, in part, certain intellectual property rights, claims and interests, together with the enforcement rights of such rights under federal or state law (the "IPR Assets" or "IPR") in the literary works of an American author named Les Dane, including his copyrighted book entitled *Big League Sales Closing Techniques* ("Big League Sales") and its progeny. Big League Sales is a compendium of Les Dane's anecdotal experiences in his career as a salesman and suggested sales techniques drawn from such experiences.

14.     Big League Sales was originally published in 1971, by the Parker Publishing Company, and was properly registered in April 1971, in compliance with the formalities of the Copyright Act of 1909.

15.     Under the Copyright law then in effect, Les Dane was entitled to an initial 28-year term of copyright protection and the right to renew for an additional 28-year term.

---

[1]  Peter Letterese is currently a Debtor in his own Chapter 7 bankruptcy case (Case No. 08-19642-JKO) and for that reason has not been joined in this case. However, his role in the underlying acts and conduct supporting the claims in this case require a description of that role, thus he is identified as a Non-Party and no relief is sought against him at this time.

16.     At some point, after its introduction, the Church of Scientology adopted Big League Sales as a training manifesto for its constituent scientologists. Moreover, the Church of Scientology developed other training materials which were largely based upon the teachings of Big League Sales.

17.     On December 31, 1993, CDI (then known as Peter Letterese and Associates, Inc. and later Impeccable Strategies, Inc.) acquired the exclusive rights to Les Dane's literary works through a written contract with the heirs of the Dane estate, including Les Dane's widow, Lois Dane. A true and correct copy of the Agreement is attached hereto as **Exhibit "A"**.

18.     CDI also acquired the outstanding publishing rights to Big League Sales pursuant to an Assignment of Copyright dated July 12, 1994 (the "Assignment") from Prentice Hall, as successor to Parker Publishing.  A true and correct copy of the Assignment is attached hereto as **Exhibit "B"**.

**B.**     *The Litigations with Church of Scientology its Affiliates.*

19.     Since 2003, CDI has been in litigation in various State and Federal courts with the Church of Scientology and its affiliates in connection with the claimed unauthorized use of Big League Sales in violation of the copyright protection afforded by Federal law.

20.     Throughout the multiple litigation matters filed by CDI and P. Letterese against the Church of Scientology and its affiliates, the claims and rights to enforcement of the copyright for the IPR Assets have been identified as owned by and vested in CDI. Additionally, not directly related to the IPR Assets, CDI was sued for damages by several dentists who claimed that CDI and/or Letterese had breached the consulting contracts.

**C.**     *The Schedules and Statements of Financial Affairs.*

21.     On June 30, 2008 ("Petition Date"), CDI filed its Voluntary Petition (the "Petition") for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Case"). The Petition was filed by Attorney Franken and Franken, P.A., acting as counsel for the Debtor during the Chapter 11 proceeding in the Bankruptcy Case, to avoid execution by several judgment creditors.

22.     The Schedules filed by the Debtor with the Petition in the Bankruptcy Case listed the following assets at item 21 on Schedule B:

> Claim against American Arbitration Association ....................$15,000,000.00

4

Claim against Church of Scientology International &
Others for Denial of Due Process ……………….....................$250,000,000.00

Claims against Church of Scientology International,
Kendrick L. Moxon; Edward Angell Palmer & Dodge LLP …....$235,000,000.00

Claims against Church of Scientology International &
Other Parties relating to copy-right claims pending on
appeal, including legal fees …………………………………….$1,000,000.00

23.     The Statement of Financial Affairs, also filed on June 30, 2008, during the
Chapter 11 bankruptcy case, lists the following litigation actions pending in federal district court,
state circuit and appellate courts, and AAA proceeding (collectively, the "CDI Lawsuits") pending
on the Petition Date:

| Caption of Suit | Nature of Proceeding | Court | Status |
|---|---|---|---|
| Ness v Letterese<br>06-5081 04 | Arbitration of Contract Dispute<br>American Arbitration | Broward Circuit<br>4th District dismissed | pending |
| Creative Desperation, Inc. et al<br>Church of Scientology<br>International et al | Federal Rico and other<br>claims | United States District Court<br>Southern District of Florida | pending<br><br>Pending |
| Creative Desperation, Inc. et al v<br>Kendrick Moxon et al<br>08-CV60984 Ungaro | denial of constitutional<br>rights and for injunction | United States District Court<br>Southern District of Florida | Pending |
| Creative Desperation v<br>American Arbitration<br>Association<br>07-13211 03 | declaratory relief, injunction<br>damages | Broward Circuit Court<br>4th District Court of Appeals | partial final<br>judgment<br>appealed<br>pending |
| Schwartz v Letterese et al<br>06-7926 05 | Arbitration of contract<br>dispute | Broward Circuit Court<br>American Arbitration<br>Association<br>4th District Court of Appeal | judgment<br>appealed |
| Brody v Letterese et al<br>06-7929 05 | Arbitration over contract | Broward Circuit Court<br>American Arbitration<br>4th District Court of Appeal | final Judgment<br>appealed |
| Peter Letterese v Church of<br>Scientology<br>07-18043 11 FL; PC34730 CA | Foreign Judgment of<br>California judgment | Broward Circuit Court<br>Superior Court Los Angeles<br>Appellate Court Fl, CA | judgment<br>appealed |

24.     Each of the CDI Lawsuits relate to and concern the CDI Assets and/or IPR
Assets. More significantly, CDI, not the Defendants, is identified as the owner of the IPR Assets.

**D.     *Competing Claims to the CDI Assets and IPR by Defendants and Third Parties.***

25.     In spite of the clear and uncontradicted claims to the IPR Assets (including the

rights of enforcement) by CDI made in numerous judicial filings, other related parties, namely, the Defendants, have recently claimed to be the owners of some or all of the IPR Assets and/or CDI Assets.

26.     On November 4, 2008, P. Letterese filed his First Amended Complaint (the "First Amended Complaint") in the Federal District Court case styled *Peter Letterese, individually and Creative Desperations, Inc., (CDI) a Florida corporation v. The Church of Scientology International, Inc. (CSI)*, etc, et al, Case No. 08-61109-Zloch/Snow (the "RICO Action"), pending in the Southern District of Florida. In the First Amended Complaint, P. Letterese seeks relief, including compensatory damages, presumably in connection with the unauthorized use of the IPR Assets by the Church of Scientology.

27.     On or about August 26, 2008, Attorney Franken and Fraken, P.A., as former counsel for CDI, and present counsel for Letterese and Fawcett, filed a pleading titled as *"Plaintiff's Notice of Joinder of Plaintiff MGSI, Inc. As Plaintiff"* (the "Notice of Joinder") in the RICO Action. [D.E. 11] Moreover, on August 26, 2008, Franken filed a copy of the Notice of Joinder in the Bankruptcy Case. [CP #150].

28.     The Notice of Joinder states, *inter alia*, :

> MGSI, Inc. assets [sic] a right common to Plaintiffs in this action against the Defendants with respect to the same transactions, occurrences and series of the occurrences and that that the question of facts and law are common to all of the Plaintiffs in this action. The acts of Plaintiffs including **MGSI Inc. as the holder of the rights from the Les Dane estate as alleged in this complaint** and a party in interest to the outcome whose rights have been violated as the rights of Plaintiffs have been violated are rightful to adjudicated [sic] before this Court as common Plaintiffs to this proceeding. (emphasis added)

29.     A duplicate of the Notice of Joinder has been filed in the other pending federal court actions as well. True and correct copies of the "Notices of Joinder" filed in the RICO case (Case No. 08-61109-CIV-ZLOCH), the Due Process Case (Case No 08-60984-CIV-UNGARO) and the Copyright case (Case No. 04-61178-CIV-HUCK).

30.     Moreover, during at least one hearing before the Bankruptcy Court in the Bankruptcy Case, Attorney Franken and Fraken, P.A., then acting as counsel for Letterese, revealed that the IPR Assets may have been divided in some respect and that the Shareholders (including, P. Letterese) of CDI may own some piece of the IPR.

31.     Meanwhile, on September 9, 2008, the Bankruptcy Court entered its Order Converting Case Under Chapter 11 To Case Under Chapter 7 [D.E. 89], whereby the Bankruptcy Case was converted from a Chapter 11 case to a Chapter 7 proceeding (the "Conversion Order"). Following the entry of the Conversion Order, the Trustee has engaged counsel in an effort to administer the CDI Assets and IPR.

32.     Thereafter, on November 5, 2008, P. Letterese and Fawcett, as Shareholders of CDI, filed their Notice of Filing of Restatement Memorandum of Terms of January 2006 Assignment [CP 150] in the Chapter 7 bankruptcy case (the "Notice"). The Notice attached a document titled "Restatement Memorandum of Terms of January 2006 Assignment" (the "2008 Assignment"). The 2008 Assignment, which is actually dated November 4, 2008, was prepared by Attorney Franken and Fraken, P.A., at the direction of, and while acting in concert with, P. Letterese, R. Letterese, Fawcett, MGSI and/or Karas. A true and correct copy of the Notice, along with the 2008 Assignment, is attached hereto as **Composite Exhibit "C"**.

33.     Significantly, the post-petition Assignment attempts to commemorate the terms of a purported prior oral assignment of the CDI and IPR Assets from CDI to MGSI, based upon alleged antecedent debts owed by CDI to MGSI, as an insider of the Debtor, while MGSI had reasonable cause to believe that CDI was insolvent. Thus, MGSI has asserted in the CDI Lawsuits, the Bankruptcy Case, and other court papers, an interest in the CDI Assets contrary and adverse to those interests claimed by the Trustee on behalf of the CDI estate.

34.     Based upon the brief exposure to the tangled affairs of this Debtor, its related entities and the family members of Letterese, the Trustee has a good faith, reasonable basis to believe that MGSI, Karas, R. Letterese and/or Fawcett may assert, either directly or indirectly, some claim or interest in and control over the CDI and/or IPR Assets adverse to the ownership rights of the Trustee.

35.     By way of example, but not limitation, MGSI and/or Karas have funded litigation brought in the name of MGSI; continued to operate the Consulting Business requiring Letterese's assistance; and have funded litigation in the name of CDI and Letterese. Until recently, however, neither MGSI or Karas have claimed any interest in the CDI Assets or IPR.

**E.     _The Consulting Business, Operating Revenue and Related CDI Assets._**

36.     Prior to the Petition Date, CDI conducted and operated a Consulting Business specifically designed and targeting dental practices, utilizing its' own name and other trade

7

names, including *Galileo Systems International, S.A.V.E! Training International,* and others.

37.     The Consulting Business has generated and is believed to continue generating revenues that have been transferred or diverted to P. Letterese and MGSI, R. Letterese and Karas. Much of the revenues have been used to wage the continuing litigation battles against the Church of Scientology at the under the direction of MGSI, Letterese and Karas, with the participation of Attorney Franken and Fraken, P.A.

**F.     *The Transfer of the Consulting Business and Relationship with MGSI.***

38.     In or about January, 2006, P. Letterese acting individually and in concert with Karas, Fawcett and P. Letterese transferred some or all of the Consulting Business, revenues and related assets to MGSI in order to avoid the claims of creditors.

39.     Since 2006, MGSI has conducted the same Consulting Business and enterprise that CDI conducted prior to the transfer. The post office box address utilized by CDI prior to the Petition Date, was also utilized by MGSI. In addition, the phones and/or phone numbers, computers, and other furniture, fixtures and equipment formerly utilized by CDI were taken over by MGSI. Moreover, the clients formerly serviced by CDI were also taken over by MGSI, along with the core employees or independent agents, who were formerly affiliated with CDI, are now affiliated with MGSI.

40.     During the time that CDI was or became insolvent, P. Letterese and Fawcett owed a fiduciary obligation to CDI and its creditors not to engage in conduct designed to transfer, dissipate, conceal, waste or otherwise dispose of the CDI Assets, IPR and Consulting Business. For the reasons stated herein, the conduct of Fawcett, individually and acting in concert with P. Letterese and Defendants, constituted a breach of duty of fiduciary duty, loyalty and/or care owed to CDI and its creditors. Fawcett exhibited a conscious, grossly negligent and/or reckless disregard for the best interests of CDI and its creditors in relation to the facts and circumstances regarding the preservation and transfer of the CDI Assets, IPR and Consulting Business. Fawcett knew, or, except for conscious, grossly negligent and/or reckless disregard of the facts, should have known, of the risk of damage that ultimately befell CDI and its credit

41.     All conditions precedent to the Trustee filing this adversary proceeding have been performed, waived and/or excused.

8

## COUNT I
## DECLARATORY RELIEF – OWNERSHIP RIGHTS
### (All Defendants)

42.      The allegations contained in paragraphs 1 through 41 are restated in their entirety.

43.      This is an action for declaratory relief pursuant to 28 U.S.C. §2201(a). The Trustee seeks a declaration of rights and other legal relations concerning the Plaintiff and Defendants respective rights, title and interests in and to the CDI Assets, IPR and Consulting Business, including the ownership, dominion and control of these assets.

44.      There is an actual controversy over the status and nature of the ownership, dominion and control by and among the Plaintiff and the Defendants to the CDI Assets and IPR, including the consulting business assets.

45.      Some or all of the Defendants may claim an interest in the CDI Assets, IPR and the Consulting Business adverse and to the exclusion of the Trustee.

46.      Pursuant to the statutory duties conferred upon the Trustee under the Bankruptcy Code, the Plaintiff has a fiduciary obligation to administer the CDI Assets, including whatever interest is held by the CDI estate in the IPR and Consulting Business for the benefit of creditors of the estate.

47.      Accordingly, faced with competing claims, interests and asserted in the CDI Assets and enforcement rights in the IPR, the Trustee necessarily requires a declaration from the Bankruptcy Court concerning the nature, validity, priority and extent of the parties rights, title and interests in the CDI Assets, IPR and Consulting Business, so that the Plaintiff may properly administer the assets of the estate for the benefit of creditors in the Bankruptcy Case.

48.      The competing claims to the CDI Assets, IPR and Consulting Business create an actual case or controversy concerning the right to enforce, sell or otherwise dispose of these assets for which the Trustee is entitled to declaratory relief.

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc., respectfully requests that the Court: (i) exercise and take jurisdiction over the controversy concerning the competing claims, rights, title and interests in the CDI and IPR Assets, including the Consulting Business; (ii) declare and adjudicate the respective interests of the Trustee and each of the Defendants, Thomas John Karas, MGSI, Inc., Ramona Letterese, Barbara Fawcett f/k/a Barbara Letterese, Charles D. Fraken and Charles D. Franken, P.A., if any,

9

including any subsequent transferee of each of the Defendants as to the CDI and IPR Assets and Consulting Business; and (iii) grant such further relief as may be just and proper to protect such rights and interests adjudicated by this Court.

<div align="center">

**COUNT II**
**PRELIMINARY AND PERMANENT INJUNCTION**
**(All Defendants)**

</div>

49.     The allegations contained in paragraphs 1 - 41 are restated in their entirety.

50.     This is an action seeking the issuance of an order providing for preliminary and permanent injunctive relief against all Defendants, their successors, assigns, officers, directors, shareholders and affiliates pursuant to Fed.R.Civ.P. 65 as incorporated by Fed.R.Bankr.P. 7065, from further transferring, dissipating, hypothecating, removing, concealing, destroying and/or otherwise disposing of the CDI Assets, IPR and Consulting Business.

51.     Plaintiff is the rightful owner and holder of all CDI Assets including, without limitation, the IPR Assets and Consulting Business. The CDI Assets are deemed property of the estate and shall be administered by the Trustee for the benefit of creditors of CDI.

52.     Based upon the various claims asserted by the Defendants, their respective affiliates, representative, successors and/or assigns, the Trustee believes that the Defendants shall continue to exert dominion and control over the CDI Assets, IPR and Consulting Business, which may diminish the value of the assets to the estate.

53.     In order to preserve the value of estate assets in the Bankruptcy Case, it is necessary that the Bankruptcy Court issue preliminary and permanent orders, decrees and judgment enjoining and restraining the Defendants, their successors, assigns, officers, directors, shareholders and affiliates from asserting ownership, control and/or dominion over the CDI Assets, IPR and the Consulting Business.

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc., seeks both preliminary and permanent injunctive relief enjoining and restraining the Defendants, Thomas John Karas, MGSI, Inc., Ramona Letterese, Barbara Fawcett f/k/a Barbara Letterese, Charles D. Fraken and Charles D. Franken, P.A., their successors, assigns, officers, directors, shareholders and affiliates from asserting ownership, control and/or dominion over the CDI and IPR Assets and any other relief the Court deems appropriate.

<div align="center">10</div>

## COUNT III
## DECLARATORY JUDGMENT
## SEEKING ALTER EGO, MERE CONTINUATION
## AND/OR SUCCESSOR LIABILITY OF MGSI
### (Against MGSI)

54.     The allegations contained in paragraphs 1 - 41 are restated in their entirety.

55.     This is an action for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, *et seq.* seeking a determination that MSGI was and continues to be the alter ego or successor entity of CDI and that all of the assets and liabilities of MSGI be deemed assets and liabilities of this estate.

56.     At all times material hereto, MSGI was formed and/or operated for an improper or illegal purpose - to, among other things, hinder, delay or defraud the creditors of the Debtor.

57.     The business of MGSI is a mere continuation and/or the legal successor entity to the business and conduct of CDI with respect to the CDI Assets, IPR and Consulting Business.

58.     Based upon the foregoing, under applicable law the entry of an order and/or judgment determining MSGI to be the alter ego or successor entity of the Debtor is both necessary and appropriate to allow the Trustee to properly marshal and administer assets of CDI for the benefit of creditors of this Bankruptcy Case.

59.     In the event the relief requested herein is granted, the Trustee shall, by separate motion to be filed in the main Bankruptcy Case to be served on all creditors and parties in interest, seek the entry of an order substantively consolidating MSGI with the estate of the Debtor.

**WHEREFORE**, Marika Tolz, As Chapter 7 Trustee for the estate of Creative Desperation, Inc., seeks judgment against MGSI declaring (i) that MSGI is the alter ego or successor entity of the Debtor at all times material to this action; (ii) that all of the assets and liabilities of MSGI be deemed assets and liabilities of this Bankruptcy Case; and (iii) for any other relief the Court deems appropriate.

## COUNT IV
## AVOIDANCE OF PRE-PETITION TRANSFER – IPR ASSETS
### (Against MGSI)

60.     The allegations contained in paragraphs 1 - 41 are restated in their entirety.

61.     This is an action to avoid the purported (oral) transfer of the IPR Assets pursuant to 11 U.S.C. §544 of the Bankruptcy Code.

62.     MGSI asserts that sometime during January 2006, CDI transferred some or all of the rights, title and interest in the CDI and IPR Assets to MGSI as purportedly memorialized in the 2006 Assignment entered into after the Petition Date.

63.     The information provided by the Debtor concerning the 2006 Assignment of the CDI and IPR Assets indicates that it was an oral assignment that was not in writing. The Trustee asserts that any alleged assignment of the IPR Assets was a nullity and is otherwise an improper transfer of estate assets.

64.     Based upon principals of contract law and applicable statutes, the oral 2006 Assignment is ineffective, even if not fraudulent and concealed, to the extent that it fails to comply with any state or federal law governing an assignment of such rights.

65.     The Plaintiff, as a Chapter 7 Trustee in bankruptcy, has the statutory right and duty to avoid certain pre and/or post-petition transfers, which are ineffective by law.

66.     Pursuant to 11 U.S.C. §544(a) of the Bankruptcy Code, the Plaintiff is vested with the rights and powers of a perfected judicial lien creditor and/or a creditor in execution.

67.     Accordingly, under 11 U.S.C. §551 of the Bankruptcy Code, the avoidance of the ineffective transfer by and between CDI and MGSI is preserved for the benefit of the estate.

**WHEREFORE**, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc., seeks judgment against the Defendant, MGSI, Inc. (i) determining and declaring that the 2006 Assignment is ineffective, both at contract and at law; (ii) avoiding the transfer of the CDI and IPR Assets and preserving the avoided transfer or the value thereof for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §544, §550 and §551 of the Bankruptcy Code and; (iii) and for such other further relief as is necessary and appropriate.

<div align="center">

**COUNT V**
**AVOIDANCE AND RECOVERY OF FRAUDULENT**
**TRANSFERS UNDER 11 U.S.C. § 548(a)(1)(A)**
**(Against MGSI and Karas)**

</div>

68.     The allegations contained in paragraphs 1 - 41 are restated in their entirety.

69.     The above-referenced transfers of the CDI Assets, IPR and Consulting Business and related revenues and profits to MGSI and Karas were made to the Defendants within two

<div align="center">12</div>

years prior to the Petition Date.

70.    Moreover, the transfer of the subject assets of CDI were made with the actual intent to hinder delay and/or defraud any entity to which the Debtor was or became indebted on or after the date that such transfers were made.

71.    By reason of the foregoing factors, the subject transfers are avoidable pursuant to 11 U.S.C. §548(a)(1)(A) of the Bankruptcy Code. As a result, the Trustee may recover the amount or value of the Debtor such transfers from the Defendants pursuant to 11 U.S.C. § 550.

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc., seeks judgment against the Defendants, MGSI, Inc. and Thomas John Karas (i) determining and declaring that the transfer of the CDI Assets, IPR and Consulting Business and related revenues is an actual fraudulent transfer under 11 U.S.C. §548(a)(1)(A); (ii) avoiding the transfers of the subject assets and preserving the avoided transfers or the value thereof for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §550 and §551 of the Bankruptcy Code and; (iii) and for such other further relief as is necessary and appropriate.

### COUNT VI
### AVOIDANCE AND RECOVERY OF FRAUDULENT
### TRANSFERS UNDER 11 U.S.C. § 548(a)(1)(B)
### (Against MGSI and Karas)

72.    The allegations contained in paragraphs 1 - 41 are restated in their entirety.

73.    The transfer of the CDI Assets, IPR and Consulting Business and related revenues and profits to MGSI and Karas were made for less than reasonably equivalent value in exchange for such transfers, given the value of assets transferred to MGSI.

74.    Furthermore, above-referenced transfers were made to the Defendants within two years prior to the Petition Date and at a time when the Debtor was (i) insolvent or became insolvent as a result of the transfers; (ii) engaged or about to be engaged in a business or transaction for which the remaining property of the Debtor was unreasonably small capital; (iii) or intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

75.    By reason of the foregoing factors, the subject transfers are avoidable pursuant to 11 U.S.C. §548(a)(1)(A) of the Bankruptcy Code. As a result, the Trustee may recover the amount or value of the Debtor such transfers from the Defendants pursuant to 11 U.S.C. § 550.

13

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc., seeks judgment against the Defendants, MGSI, Inc. and Thomas John Karas (i) determining and declaring that the transfer of the CDI Assets, IPR and Consulting Business and related revenues is deemed a constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B); (ii) avoiding the transfers of the subject assets and preserving the avoided transfers or the value thereof for the benefit of the bankruptcy estate under 11 U.S.C. §550 and §551 of the Bankruptcy Code and; (iii) and for such other further relief as is necessary and appropriate.

<div align="center">

**COUNT VII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS UNDER**
**11 U.S.C. §§ 544(b)(1) AND 550 AND FLA. STAT. §§ 726.105(1)(a) AND 726.108**
**(Against MGSI and Karas)**

</div>

76.    The allegations contained in paragraphs 1 - 41 are restated in their entirety.

77.    This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §544(b)(1) and 550 of the Bankruptcy Code and Chapter 726, *et. seq.*, Florida Statutes.

78.    Pursuant to 11 U.S.C. §544, the Trustee may avoid any transfers made with the actual intent to hinder, delay and/or defraud any creditor of the Debtor under Florida law. Section 726.105(1)(a), *Florida Statutes,* provides:

(1)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With the actual intent to hinder, delay, or defraud any creditor of the debtor;

79.    Within four (4) years of the Petition Date, the Debtor transferred the CDI Assets, IPR and Consulting Business, together with revenues and profits derived therefrom to MGSI and/or Karas with actual intent to hinder, delay, or defraud creditors of CDI, which transfers are avoidable and should be avoided under §726.105(1)(a), *Florida Statutes.*

80.    As a result of the transfer of these assets, the Trustee has been damaged pursuant to 11 U.S.C. §544(b) and §726.105(1)(a) of the *Florida Statutes* for the total value of the transfers.

81.    The Defendants were either the initial transferees, or immediate or mediate transferees of such initial transferees and were otherwise beneficiaries of the transfers as

<div align="center">14</div>

described herein, for whose benefit the transfer was made and, as a result, the Trustee is entitled to recover the transfers as voidable pursuant to 11 U.S.C. §550(a)(1).

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc., seeks judgment against the Defendants, MGSI, Inc. and John Thomas Karas (i) determining and declaring that the transfers of the CDI Assets, IPR and Consulting Business, together with revenues and profits derived therefrom, are actual fraudulent transfers voidable by the Trustee; (ii) avoiding the subject transfers and preserving the avoided transfers or the value thereof for the benefit of the bankruptcy estate under 11 U.S.C. §550 and §551 of the Bankruptcy Code and; (iii) and for such other further relief as is necessary and appropriate.

<div align="center">

**COUNT VIII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS UNDER**
**11 U.S.C. §§ 544(b)(1) AND 550 AND FLA. STAT. §§ 726.105(1)(b) AND 726.108**
**(MGSI and Karas)**

</div>

82.     The allegations contained in paragraphs 1 - 41 are restated in their entirety.

83.     This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §544(b)(1) and 550 of the Bankruptcy Code and Chapter 726, *et. seq.*, Florida Statutes.

84.     Pursuant to 11 U.S.C. §544, the Trustee may avoid any transfers made for less than reasonably equivalent value that were made when the debtor was insolvent, or caused the insolvency of the debtor under Florida law.

1.     Section 726.105(1)(b), *Florida Statutes,* provides:

(1)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

<div align="center">* * *</div>

(b) without receiving reasonably equivalent in value in exchange for the transfer or obligation, and the debtor:

(1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) intended to incur, or believed or reasonably should have believed that he would incur, debts

<div align="center">15</div>

beyond his ability to pay as they became due.

85.    Within four (4) years of the Petition Date, the Debtor incurred obligations to various creditors in connection with the Consulting Business and other related enterprises.

86.    The Debtor transferred the CDI Assets, IPR and Consulting Business, together with revenues and profits derived these assets to MGSI and/or Karas, without receiving a reasonably equivalent value in exchange for the transfers, which are avoidable and should be avoided under §726.105(1)(b), *Florida Statutes*.

87.    At the time of the subject transfers to Defendants, the Debtor (i) was engaged or was about to engage in business or a transaction for which the remaining property of CDI constituted an unreasonably small amount of capital; and (ii) intended to incur, or believed or reasonably should have believed that CDI would incur, debts beyond the ability of CDI to pay as they became due.

88.    As a result of the transfers of these assets, the Trustee been damaged pursuant to 11 U.S.C. §544(b) and §726.105(1)(b) of the *Florida Statutes* for the total value of such transfers.

89.    The Defendants were either the initial transferees, or immediate or mediate transferees of such initial transferees and was otherwise a beneficiary of the transfers as described herein, for whose benefit the transfers were made and, as a result, the Trustee is entitled to recover the transfers as voidable pursuant to 11 U.S.C. §550(a)(1).

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc., seeks judgment against the Defendants, MGSI, Inc. and John Thomas Karas (i) determining and declaring that the transfers of the CDI Assets, IPR and Consulting Business, together with revenues and profits derived therefrom, are constructive fraudulent transfers voidable by the Trustee; (ii) avoiding the subject transfers and preserving the avoided transfers or the value thereof for the benefit of the bankruptcy estate under 11 U.S.C. §550 and §551 of the Bankruptcy Code and; (iii) and for such other further relief as is necessary and appropriate.

16

COUNT IX
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS UNDER 11 U.S.C. §§ 544(b)(1) AND 550 AND FLA. STAT. §§ 726.106(1) AND 726.108
### (MGSI and Karas)

90.     The allegations contained in paragraphs 1 - 41 are restated in their entirety.

91.     This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §544(b)(1) and 550 of the Bankruptcy Code and Chapter 726, *et. seq.*, Florida Statutes.

92.     Pursuant to 11 U.S.C. §544, the Trustee, may avoid any transfers made for less than reasonably equivalent value that were made when the debtor was insolvent, or caused the insolvency of the debtor under Florida law.

93.     Section 726.106(1), *Florida Statutes,* provides:

(1)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent in value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

94.     Within four (4) years of the Petition Date, the Debtor incurred obligations to various creditors in connection with the Consulting Business and other related enterprises.

95.     The Debtor transferred the CDI Assets, IPR and Consulting Business, together with revenues and profits derived these assets to MGSI and/or Karas, without receiving a reasonably equivalent value in exchange for the transfers and CDI was insolvent at that time or became insolvent as a result of these transfers, which are avoidable and should be avoided under §726.106(1), *Florida Statutes.*

96.     As a result of the transfers of these assets, the Trustee been damaged pursuant to 11 U.S.C. §544(b) and §726.106(1) of the *Florida Statutes* for the total value of such transfers.

97.     The Defendants were either the initial transferees, or immediate or mediate transferees of such initial transferees and was otherwise a beneficiary of the transfers as described herein, for whose benefit the transfers were made and, as a result, the Trustee is entitled to recover the transfers as voidable pursuant to 11 U.S.C. §550(a)(1).

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc., seeks judgment against the Defendants, MGSI, Inc. and John Thomas Karas (i) determining and declaring that the transfers of the CDI Assets, IPR and Consulting

17

Business, together with revenues and profits derived therefrom, are fraudulent transfers as to present creditors of the CDI estate voidable by the Trustee; (ii) avoiding the subject transfers and preserving the avoided transfers or the value thereof for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §550 and §551 of the Bankruptcy Code and; (iii) and for such other further relief as is necessary and appropriate.

<div align="center">

**COUNT X**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**UNDER 11 U.S.C. § 544 AND FLORIDA STATUTE 726.106(2)**
**(MGSI and Karas)**

</div>

98.     The allegations contained in paragraphs 1 - 41 are restated in their entirety.

99.     This is an adversary proceeding to recover fraudulent transfers pursuant to 11 U.S.C. §544(b)(1) and 550 of the Bankruptcy Code and Chapter 726, *et. seq.*, Florida Statutes.

100.    Pursuant to 11 U.S.C. §544, the Trustee, may avoid any transfers made for less than reasonably equivalent value that were made when the debtor was insolvent, or caused the insolvency of the debtor under Florida law.

101.    Section 726.106(2), *Florida Statutes,* provides:

> (2)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

102.    Within four (4) years of the Petition Date, the Debtor incurred obligations to various creditors in connection with the Consulting Business and other related enterprises.

103.    The Debtor transferred the CDI Assets, IPR and Consulting Business, together with revenues and profits derived these assets to MGSI and/or Karas, as insiders of CDI for an alleged antecedent debt at the time CDI was insolvent and the Defendants had reasonable cause to believe that the Debtor was insolvent, which transfers are avoidable and should be avoided under §726.106(2), *Florida Statutes.*

104.    As a result of the transfers of these assets, the Trustee been damaged pursuant to 11 U.S.C. §544(b) and §726.106(2) of the *Florida Statutes* for the total value of such transfers.

105.    The Defendants were either the initial transferees, or immediate or mediate

<div align="center">18</div>

transferees of such initial transferees and was otherwise a beneficiary of the transfers as described herein, for whose benefit the transfers were made and, as a result, the Trustee is entitled to recover the transfers as voidable pursuant to 11 U.S.C. §550(a)(1).

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc., seeks judgment against the Defendants, MGSI, Inc. and John Thomas Karas (i) determining and declaring that the transfers of the CDI Assets, IPR and Consulting Business, together with revenues and profits derived therefrom, are fraudulent and/or preferential transfers as to present creditors of the CDI estate voidable by the Trustee; (ii) avoiding the subject transfers and preserving the avoided transfers or the value thereof for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §550 and §551 of the Bankruptcy Code and; (iii) and for such other further relief as is necessary and appropriate.

<div align="center">

**COUNT XI**
**AVOIDANCE OF PRE-PETITION TRANSFER – CONSULTING BUSINESS**
**(Against MGSI and Karas)**

</div>

106.    The allegations contained in paragraphs 1 - 41 are restated in their entirety.

107.    This is an action to avoid the transfer of the Consulting Business pursuant to *Fla.Stat.* §726.101, *et seq.* and applicable law, since sometime prior to the commencement of the Bankruptcy Case, CDI transferred some or all of the rights in the Consulting Business assets to MGSI.

108.    The transfer of the Consulting Business and related revenues were made with the actual intent to hinder delay and/or defraud creditors of the estate and the ability of the Trustee to administer such assets in the Bankruptcy Case.

109.    The transfer of the Consulting Business and revenues derived therefrom was made for no consideration or any such consideration was legally inadequate, given the value of assets transferred to MGSI and/or Karas.

110.    The Debtor was insolvent at the time of the transfer of the Consulting Business and related revenues or was rendered insolvent by such transfer.

111.    The Plaintiff, as a Chapter 7 Trustee in bankruptcy, has the statutory right and duty to avoid fraudulent transfers and recover the value thereof for the benefit of the estate.

112.    Pursuant to 11 U.S.C. §544 and *Fla.Stat.* §726.105, the Plaintiff may avoid a fraudulent transfer which has occurred within four (4) years of the Petition Date.

113.    Pursuant to 11 U.S.C. §551, the avoidance and recovery of the fraudulent transfer by and between CDI and MGSI and Karas are preserved for the benefit of the estate.

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc. seeks judgment against the Defendants, MGSI, Inc. and John Thomas Karas (i) determining and declaring that the transfer of the consulting business assets and related revenue is an actual or constructive fraudulent transfer; (ii) avoiding the transfer of the consulting business assets and related revenue and preserving the avoided transfer or the value thereof for the benefit of the bankruptcy estate pursuant to under 11 U.S.C. §550 and §551 of the Bankruptcy Code and; (iii) and for such other further relief as is necessary and appropriate.

### COUNT XII
### AVOIDANCE OF PRE-PETITION TRANSFER – CONSULTING BUSINESS
### (Against MGSI and Karas)

114.    The allegations contained in paragraphs 1 - 41 are restated in their entirety.

115.    This is an action to avoid the transfer of the Consulting Business pursuant to *Fla.Stat*. §726.101, *et seq*. and applicable law, since sometime prior to the commencement of the Bankruptcy Case, CDI transferred some or all of the rights in the Consulting Business assets to MGSI.

116.    The transfer of the Consulting Business and related revenues were made with the actual intent to hinder delay and/or defraud creditors of the estate and the ability of the Trustee to administer such assets in the Bankruptcy Case.

117.    The transfer of the Consulting Business and revenues derived therefrom was made for no consideration or any such consideration was legally inadequate, given the value of assets transferred to MGSI.

118.    The Debtor was insolvent at the time of the transfer of the Consulting Business and related revenues or was rendered insolvent by such transfer.

119.    The Plaintiff, as a Chapter 7 Trustee in bankruptcy, has the statutory right and duty to avoid fraudulent transfers and recover the value thereof for the benefit of the estate.

120.    Pursuant to 11 U.S.C. §544 and *Fla.Stat*. §726.105, the Plaintiff may avoid a fraudulent transfer which has occurred within four (4) years of the Petition Date.

121.    Pursuant to 11 U.S.C. §551, the avoidance and recovery of the fraudulent transfer by and between CDI and MGSI is preserved for the benefit of the estate.

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc. seeks judgment against the Defendants, MGSI, Inc. and Thomas John Karas (i) determining and declaring that the transfer of the Consulting Business and related revenues is an actual or constructive fraudulent transfer; (ii) avoiding the transfer of the consulting business assets and related revenue and preserving the avoided transfer or the value thereof for the benefit of the bankruptcy estate pursuant to under 11 U.S.C. §550 and §551 of the Bankruptcy Code and; (iii) and for such other further relief as is necessary and appropriate.

## COUNT XIII
## AVOIDANCE OF POST-PETITION TRANSFER – IPR ASSETS
### (Against MGSI)

122.    The allegations contained in paragraphs 1 - 41 are restated in their entirety.

123.    MGSI has relied, in whole or in part, upon the 2008 Assignment to assert rights, claims and interests in the IPR Assets and other assets that are property of the CDI estate.

124.    The Assignment was executed on November 5, 2008, well after the Petition Date and, therefore, is ineffective and void as an improper and unauthorized post-petition transfer of an interest of the Debtor in property of the estate under 11 U.S.C. §541 of the Bankruptcy Code.

125.    11 U.S.C. §549 provides in pertinent part, as follows:

(a) Except as provided in subsection (b) or (c) of this section, the Trustee may avoid a transfer of property of the estate –

(1) that occurs after the commencement of the case; and
(2) (A) that is authorized only under §303(f) or 542(c) of this title; or
   (B) that is not authorized under this title or by the Court.

126.    For the reasons state above, the Trustee may avoid and recover post-petition transactions pursuant to 11 U.S.C. §549 and §550, such that any claims, rights or interests asserted by MGSI in the CDI and IPR Assets pursuant to the 2008 Assignment are ineffective and avoidable based upon the statutory prohibition on post-petition transfers.

127.    Accordingly, the Trustee seeks the entry of an order avoiding any improper post-petition transfer of the CDI and IPR Assets and preserving the avoided transfer or the value thereof for the benefit of the estate.

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc., seeks judgment against Defendant, MGSI, Inc., its successors and assigns (i) determining and declaring that the 2006 Assignment is ineffective and/or avoidable as

an unauthorized post-petition transfer; (ii) avoiding the transfer of the CDI and IPR Assets and preserving the avoided transfer or the value thereof for the benefit of the bankruptcy estate pursuant to under 11 U.S.C. §549, §550 and §551 of the Bankruptcy Code; and (iii) for such other further relief as the Court deems necessary and appropriate.

<div align="center">

**COUNT XIV**
**BREACH OF FIDUCIARY DUTY**
**(Against Fawcett)**

</div>

128.    The allegations contained in paragraphs 1 - 41 are restated in their entirety.

129.    At all material times, P. Letterese and Fawcett were officers and/or directors of CDI. As such, P. Letterese and Fawcett owed CDI, its' shareholders and creditors a fiduciary duty to discharge their duties in good faith with the care of that an ordinary, prudent officer or director in a like position would exercise and in a manner reasonably believed to be in the best interest of CDI.

130.    Moreover, at the time CDI became insolvent, P. Letterese and Fawcett then owed their fiduciary obligation to creditors of CDI. For the reasons stated herein, the conduct of Fawcett, individually and acting in concert with P. Letterese and Defendants, constituted a breach of duty of fiduciary duty, loyalty and/or care owed to CDI and its creditors.

131.    Fawcett exhibited a conscious, grossly negligent and/or reckless disregard for the best interests of CDI and its creditors in relation to the facts and circumstances regarding the preservation and transfer of the CDI Assets, IPR and Consulting Business. Fawcett knew, or, except for conscious, grossly negligent and/or reckless disregard of the facts, should have known, of the risk of damage that ultimately befell CDI and its creditors concerning the disposition of these assets.

132.    Fawcett committed ultra vires acts by authorizing CDI to enter into the transactions whereby the CDI Assets, IPR and Consulting Business were transferred to or taken over by MGSI, in order to advance her own interests to the detriment of CDI and its' creditors.

133.    Each of the above breaches adversely impacted and conferred no benefit on CDI, while conferring a benefit upon third parties including, but not limited to, P. Letterese, Fawcett, Karas and MGSI.

134.    Fawcett was grossly negligent and/or acted with reckless disregard or in bad faith in the discharge of her duties as an officer and/or director of CDI.

<div align="center">22</div>

135.    As a direct and proximate result of the aforementioned breaches of fiduciary duty of Fawcett, the ongoing value of CDI was substantially diminished to the detriment of creditors of the estate.

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc., seeks judgment against Defendant, Barbara Fawcett, for compensatory and special damages including, but not limited to, the value of the transferred assets, the loss of revenues, profit and business opportunities of CDI, the increased insolvency of CDI, out-of-pocket fees, costs and expenses attributable and incurred or paid by CDI and the Trustee, all attributable attorneys fees, costs and expenses paid or incurred by CDI pre-petition, plus pre-judgment interest, court costs and for such other relief this Court deems appropriate for which the Plaintiff reserves the right to seek punitive damages at the appropriate time.

<div align="center">

**COUNT XV**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
**(Against Karas)**

</div>

136.    The allegations contained in paragraphs 1 - 41 are restated in their entirety.

137.    Prior to the Petition Date, P. Letterese and Fawcett were officers and/or directors of CDI.

138.    At all times material hereto, Karas had full knowledge of the facts and circumstances concerning the transfers of the CDI Assets, IPR and Consulting Business and the commensurate breaches of fiduciary duties committed by P. Letterese and Fawcett with respect to CDI and its creditors.

139.    Notwithstanding this, Karas, acting individually and in concert with the Defendants, and at the direction of P. Letterese and Fawcett, knew or should have known that his conduct and actions, aided and abetted the breaches of fiduciary duties and fraudulent acts committed by the Defendants, which have diminished the value of the CDI Assets, IPR and Consulting Business to the detriment of creditors of the estate.

140.    Based upon the foregoing, Karas is liable for all damages proximately caused by his acts and omissions which were not privileged or justified.

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc., seeks judgment against Defendant, John Thomas Karas, for compensatory damages and special damages including, but not limited to, the value of

<div align="center">23</div>

transferred assets, lost revenue and profits, increased insolvency of CDI, out-of-pocket fees, costs and expenses attributable and incurred or paid by CDI and the Trustee, all attributable attorneys fees, costs and expenses paid or incurred by CDI pre-petition, plus pre-judgment interest, court costs and for such other relief this Court deems appropriate. The Plaintiff reserves the right to seek punitive damages at the appropriate time.

## COUNT XVI
## CIVIL CONSPIRACY
### (All Defendants)

141.    Plaintiff is the rightful owner of the CDI assets and the IPR assets.

142.    The Defendants, individually, and at the direction and under the control of P. Letterese and/or Karas, have wrongfully colluded and conspired with each other, by willfully, maliciously and intentionally transferring the CDI Assets, IPR and Consulting Business and related revenues derived from these assets to MGSI and/or Karas with the intent to hinder, delay and/or defraud creditors of the CDI estate.

143.    The Defendants, individually, and at the direction and under the control of P. Letterese and/or Karas, have wrongfully colluded and conspired with each other, by willfully, maliciously and intentionally continuing to exert or exercise dominion and control over the CDI Assets, IPR and Consulting Business, which may diminish the value of the assets to the CDI estate to be administered by the Trustee.

144.    Furthermore, the Defendants, acting individually and in concert with each other, and at the direction and under the control of P. Letterese and/or Karas, have wrongfully colluded and conspired with each other, by engaging in conduct designed to exert or exercise dominion and control of the CDI Assets, IPR and Consulting Business, including the revenues and profits thereof, which has impeded the ability of the Trustee to marshal and administer these assets for the benefit of creditors of the CDI estate.

145.    As a direct proximate result of the wrongful acts and conduct by Defendants, the Plaintiff has and will continue to suffer irreparable harm and damages if the relief requested herein is not granted.

**WHEREFORE**, the Plaintiff, Marika Tolz, as Chapter 7 Trustee for the estate of Creative Desperation, Inc., seeks judgment against Defendants, Thomas John Karas, MGSI, Inc., Ramona Letterese, Barbara Fawcett f/k/a Barbara Letterese, Charles D. Fraken and Charles D.

24

Franken, P.A., for compensatory damages and special damages including, but not limited to, the value of transferred assets, the loss of revenue, the increased insolvency of CDI, out-of-pocket fees, costs and expenses attributable and incurred or paid by CDI and the Trustee, all attributable attorneys fees, costs and expenses paid or incurred by CDI pre-petition, plus pre-judgment interest, court costs and for such other relief this Court deems appropriate. The Plaintiff reserves the right to seek punitive damages at the appropriate time.

**Dated this  22nd  day of June, 2009.**

**Respectfully Submitted,**

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Counsel for Marika Tolz as Chapter 7 Trustee*
200 East Broward Blvd. - Ste. 1110
Fort Lauderdale, FL  33301
Telephone:      (954) 453-8000
Facsimile:      (954) 453-8010

By:/s/Bart A. Houston
    **Bart A. Houston Esq.**
    Florida Bar No. 623636
    bhouston@gjb-law.com
    **Barry P. Gruher, Esq.**
    Florida Bar No. 960993
    bgruher@gjb-law.com

25

# EXHIBIT

# "A"

Mar 01 2005 3:24PM   Law Offices of Davis P. H   6817756091   p.9

V3465 D380
Page 1

## AGREEMENT

This agreement, made and entered into as of this ___31st___ day of December, 1993,
by and between PETER LETTERESE & ASSOCIATES, INC., a Florida corporation, having
its principal place of business at 5000 S.W. 148TH AVENUE, FORT LAUDERDALE, FL,
33330, to be referred to in this agreement as "PLA," and MRS. LOIS B. DANE, whose
address is 6992 MAYBANK HIGHWAY, WADMALAW ISLAND, SC, 29487, to be
referred to in this agreement as "LBD."

Since, LBD states that she is the owner of the rights to, titles to and interests in the
copyrights of the materials described in Section 1 below, that have been registered in any part
of the world.

Since,  LBD states that she is the owner of the rights to, titles to and interests in the
copyrights of the materials described in Section 1 below, for every part of the world where
that have not been registered and/or published.

Since, PLA desires to become licensed to make exclusive use of all of LBD's rights,
titles and interests.

Now, because of the above, for consideration (the exchange of something valuable )
and with the exchanging of promises and guarantees, all of which are described below, the
parties agree as follows:

PL _____   LBD _____

V3465 D380

V3465 D380
Page 2

**Note:** This document is being written as nearly as possible in plain English. There will be very few references to legal terms, but the agreement should be understood to carry the full weight and meaning that the appropriate legal terms would give it. Any terms that might be misunderstood by a non-lawyer will be defined in a section directly following this note.

**DEFINITIONS:** These are included to avoid any misunderstanding between LBD and PLA of the terms used in this document.

**Artificial person:** A corporation is considered by the law to be an artificial person.

**Assignment:** The legal transfer of some property, right, etc.

**Assign:** To transfer or hand over (some property, right, etc.) legally.

**Breach:** Exists where one party to a contract fails to carry out a term, promise, or condition of the contract.

**Challenge to the copyright:** To question formally the legality of the copyright or legal qualifications of the copyright holder.

**Compensated usage:** A use for which money, products or services have been received in exchange.

**Copyright:** The right to copy a piece of original work by an author or artist.

**Cure:** Used with the terms breach or default as in "cure the breach" or "cure the default." This means to correct whatever it was that breached the contract or whatever was considered a default of the contract. Usually, "cure" is used to indicate that the party that breached or defaulted on the contract has corrected the problem within the time

PL          LBD

V3+65 D380
Page 3

Dane/PL&A, Inc.
Agreement
Page 3

limits of the contract. Generally, a "cure" would continue a contract that would

otherwise be terminated, because of this, if the time limit of the contract has run out,

the correction of the problem will not, usually, be considered a "cure" since the

contract will have already been terminated for other reasons.

**Default:** To fail to do something or appear somewhere when due.

**Exclusive license:** Permission to do or use something and the promise not to give anybody

else permission to do or use it in the same way.

**Execution:** The signing of a document. A document is executed when the party who is to

be bound by the document has signed the document. That means that if A and B draw

up a contract and A *executes* it but B does not, B can hold A to the letter of the

contract if B has an *executed* copy of the contract (if A never turns over the *executed*

copy to B, then B has no proof that A ever *executed* the contract). A, though cannot

hold B to the contract because B has not *executed* the contract.

**Guarantee:** A promise to replace, repair or return the money for an item purchased if it is

not just the way the seller represented it to be.

**Inability:** To be totally unable, at any cost, to deliver what was promised.

**Infringement:** An invasion of the rights being licensed in this agreement.

**Interests:** Any share or part in properties, businesses, actions or activities owned by a

person.

**License:** Fact or condition of being permitted to do something.

**Mark:** The sign, writing or ticket put upon goods to distinguish them from others, usually

appearing as a "trade-mark."

PL                              LBD

V3465 D380
Page 4

Dane/PL&A, Inc.
Agreement
Page 4

**Publication in original form:** The publication of a book as a book. The publishing of an article as and article. The conversion of a book into a workbook is not publication in original form. The legal term for "publication in original form" is "primary publication."

**Receiver:** A person appointed by law to take charge of the property of another.

**Registered:** Entered or recorded in some official register, record or list of similar items.

**Rights:** Claims, titles or privileges that are lawful.

**Royalties:** A share of the income or profits paid to the owner of a copyright for the use of that copyright.

**Service mark:** The mark or symbol used by a business or organization to distinguish its services from the services of others.

**Sublicense:** Where one who has received a license to a copyright gives a part of those rights to a third party.

**Successor:** One who takes the place that another has left. Usually it is following a death. For corporations it is usually when one corporation assumes the rights and burdens of another corporation.

**Terminate:** Bring to an end, put an end to, conclude.

**Title:** A legal right to the possession of property. A copyright is considered to be property.

**Trademark:** The mark, picture, name, word, symbol, etc. owned and used by a manufacturer or merchant to distinguish his goods from the goods of others.

**Trustees:** A person or group who are appointed to manage the affairs of another individual, business, etc.

PL                              LBD

V5465 D380
Page 5

Dane/PL&A, Inc.
Agreement
Page 5

**Unregistered:** Not entered or recorded in some official register, record or list of similar items.

**Warranty:** A promise or pledge that something is what it is claimed to be.

**Worldwide:** Spread throughout the world.

## SECTION 1: SUBJECT OF THE AGREEMENT

1.    The subject matter of this agreement is the complete body of literary and other work created by the author, Les Dane, during his lifetime which are owned by LBD. This includes all published, recorded, written, filmed, taped, transcribed, oral, notated, outline, stenographic, etc. work produced by Mr. Dane throughout the course of his life with the exception of those rights licensed to Prentice Hall, Inc. And, in the event that any such rights so licensed to Prentice Hall, Inc. shall revert to LBD, or are the subject of copyright renewal, or otherwise become available, those rights will be included in and as part of the subject matter of this agreement.

## SECTION 2: LBD'S WARRANTY OF TITLE

1.    LBD states and swears that she is the sole owner of the registered and unregistered copyrights to Les Dane's total lifetime output as described in Section 1 above in the United States and throughout the world.

2.    LBD also states and swears that she and her children, Lois Dane Richter, Leslie Achilles Dane Jr., Elizabeth Dane Shook, John Bentz Dane, Jennifer Michelle Dane,

PL                LBD

87 of 262

Law Offices of David C. Fr    6617750391    p. 10

V3465 D380
Page 6

Dane/PLEA, Inc.
Agreement
Page 6

and Malcolm Ezra Dane, have the right to file for any renewal of the copyrights that may be necessary during the course of this agreement in the United States and throughout the world.

3. LBD shall furnish PLA with proof of the renewal of the copyrights or proof of the date by which the renewal must be filed.

4. LBD also states and swears that she has the full right to enter into this agreement.

## SECTION 3: SCOPE OF THE LICENSE

1. This agreement is specifically for the granting of a license to PLA for the use of the material in Section 1.

2. This license is to be an exclusive license for the use of the Section 1 material throughout the world, in all languages, for the life of the copyright and the renewal copyrights.

3. The interest contained within this license specifically excludes the rights being licensed to Prentice Hall, Inc. and not being available to PLA through LBD.

4. The geographic area of the license is for worldwide rights not to be limited by any geographic, political or other boundary.

5. The license specifically includes, but is not limited to, the right to:

    i. The exclusive license, during the life of the copyright and the renewal copyrights, to all rights of every nature, throughout the world, whether now existing or hereafter developed in EFFECTIVE SALES CLOSING TECHNIQUES to the extent the undersigned own or control the

PL                    LBD

Law Offices of David C. L. ...                                                  P. 11

V3465 D380
Page 7

Dane/PL&A, Inc.
Agreement
Page 7

editions, translations, audio and electronic, and the right to the use of

the name and likeness of Les Dane in connection with seminars,

lectures and other applications.

**ii.**     The full and exclusive rights to STRIKE IT RICH SALES

PROSPECTING that would include:

(1)    Publishing in hard and soft cover,

(2)    Workbooks and any other derivative works,

(3)    Full electronic rights for all platforms including Interactive

technology,

(4)    Full audio rights for all formats including interactive technology,

(5)    Full video rights for all formats including interactive technology,

(6)    Full use of the name and image of Les Dane as the author,

(7)    Full performance rights including seminars and lectures.

**iii.**    The full and exclusive rights to LES DANE'S MASTER SALES

GUIDE that would include:

(1)    Publishing in hard and soft cover,

(2)    Workbooks and any other derivative works,

(3)    Full electronic rights for all platforms including interactive

technology,

(4)    Full audio rights for all formats including interactive technology,

(5)    Full video rights for all formats including interactive technology,

(6)    Full use of the name and image of Les Dane as the author.

PL _____            LBD _____

V3465 D380
Page 8

(7)   Full performance rights including seminars and lectures.

iv.   The full and exclusive rights to AMATEURS DON'T MAKE A DIME SELLING HARDGOODS: 14 STEPS TO BIG MONEY SUCCESS that would include:

(1)   Publishing in hard and soft cover,

(2)   Workbooks and any other derivative works,

(3)   Full electronic rights for all platforms including interactive technology,

(4)   Full audio rights for all formats including interactive technology,

(5)   Full video rights for all formats including interactive technology,

(6)   Full use of the name and image of Les Dane as the author,

(7)   Full performance rights including seminars and lectures.

v.   LBD grants to PLA the right to be the exclusive world-wide representative of LBD and/or the estate of Les Dane for all rights to the works of Les Dane owned by LBD and/or the estate of Les Dane now and in the future. This grant of rights includes the full power to act in LBD and/or the Estate's behalf regarding the works of Les Dane, in copyright, in renewal copyright and in all contracts including but not limited to the Prentice Hall, Inc. contract.

vi.   The full and exclusive rights to any and all other works of Les Dane now owned by LBD and/or the estate and any and all works of Les

PL               LBD

V3465 D380
Page 9

Dane/PL&A, Inc.
Agreement
Page 9

Dane that may be discovered in the future that are not covered by the above grants.

vii.. Included in the rights being granted is the right to translate any and all of the works from the English original into any and all languages. It is understood that this right includes the right to publish that translation in any and all countries of the world.

6. PLA also obtains the right to sublicense the above rights.

## SECTION 4: TRANSFER OF INFORMATION

1. Upon the execution of the agreement, LBD shall furnish PLA with the materials described in Section 1. The materials need not be the original manuscripts, notes, etc. but must be exact duplicates of the originals. Photocopies and clear copies of tapes will be acceptable.

2. If there is a lack of clarity in any of the copied material, LBD shall furnish PLA with the original for a period long enough to allow the creation of a clear copy. Once the illegible or undeciferable section is clarified, the original shall be returned to LBD by PLA.

## SECTION 5: TRADEMARKS AND SERVICE MARKS

1. The license also includes the right to use the name and image of Les Dane in any and all promotional materials, packaging, advertising and marketing campaigns for the products and services listed earlier in this paragraph.

PL                           LBD

2.      Both LBD and PLA understand that although the surname of "Dane" itself cannot be trademarked unless it has come to have a unique secondary meaning, the full name of "Les Dane" can be trademarked.

3.      This license is to include the right to use the name and image of Les Dane in the trademarks and service marks of PLA so as to promote the products and services that directly use Les Dane's works.  Examples of such usage are: Les Dane Sales Seminars, Les Dane Sales Workshops, The Les Dane Method, Les Dane Video Workshops, etc.

4.      PLA will be solely responsible for the costs of such trademarking and service marking.

5.      PLA will be responsible for the defense of such trademarks and service marks.

6.      LBD will not license or allow any other person or firm to trademark the name or image of Les Dane.  The pursuit of any violators of the trademarks or service marks will be conducted by PLA with the complete cooperation of LBD as is outlined in Section 9: Litigation, below.  It should be noted here that LBD is not liable for the costs of such litigation but only for help with information, testimony, etc.


## SECTION 6:  THE EXCHANGE FOR THE LICENSE (CONSIDERATION)

1.      At the time of signing this agreement, PLA shall pay to LBD the sum of ONE dollar ($1.00).  This payment is not to be refunded for any reason other than LBD's inability to grant the rights described in this agreement.  This payment is not to be credited against any future royalties.  This payment is to be understood to be a full payment for the exclusive use of the materials described above.

PL                              LBD

V3465 D380    **Agreement**
Page 11    **Page 11**

2(a).    PLA shall make royalty payments to LBD.  These payments will be two and
one half percent (2½%) of the received, seminar and consultancy generated, gross income
and ten percent (10%) of the gross income received from any other compensated use of the
licensed materials.  This would include but not be limited to all of the uses listed in Section 3
Paragraph 5 above.

(b).    These payments shall be made on a weekly basis for those weeks in which
there is compensated usage.  At LBD's request a weekly notice of the compensated usage will
be furnished by PLA to LBD.  A "week" being defined as from 2:00pm Thursday to 2:00pm
of the following Thursday.  The payment and/or the notice is to be mailed by first class
United States mail on the Wednesday following the week-ending Thursday.  The payments
and/or notice are to be mailed to the address of LBD listed above.

(c).    PLA shall also include in the income used to calculate the royalty payments all
income received from any subsidiaries or sublicensees of the Section 1 material.

**SECTION 7: BOOKKEEPING AND RECORDS**

1.    PLA shall keep and shall require its subsidiaries and sublicensees to keep books
and records that contain a complete and accurate record of all the data necessary to compute
the royalties payable under this agreement.

2.    These books shall be available for inspection upon prior written notice of not
less than five (5) business days at PLA's regular place of business during PLA's regular
business hours.  The expenses of such a trip shall be borne by LBD.  LBD will be allowed to

PL                     LBD

Law Offices of Usote L. T... P 661 7750591   P. 16

V3465 D380
Page 12

Page 12

copy the information in the books and records solely to ensure that proper royalties have been paid.

3.    If PLA is given written notice more than five (5) business days in advance, LBD will be allowed to have the Section 7 Paragraph 2 inspection done by a Certified Public Accountant of LBD's choosing.  The costs of the accountant, any travel, etc. are to be paid by LBD.

## SECTION 8:  COPYRIGHT RENEWAL

1.    LBD shall be responsible for maintaining the copyrights or renewal copyrights on the materials in Section 1 in a current state.  To accomplish this, PLA as agent for LBD shall retain an attorney specializing in copyright law.

## SECTION 9:  LITIGATION

1.    PLA shall have the right, at its own expense, to enforce the copyrights or renewal copyrights against any person, natural or artificial, who infringes upon any of the licensed copyrights or renewal copyrights.  If PLA takes such action, it must consult with LBD to determine strategy, tactics, timing and the compensation to be sought.  If there is a challenge to the copyrights or renewal copyrights and if PLA chooses to pursue the challenge, LBD is not committed to bear any cost of the litigation but may do so if she desires.  But, LBD is committed to help with facts, documents, testimony and information as needed.  Any compensation won shall have the expenses of fighting the challenge deducted and the balance

PL            LBD

Mar 04 2008 3:29PM    Law Offices of David L. H    6617750391    p.17

Page 13

V3465 0380
Page 13

shall be apportioned as though it were "any other compensated use" income in Section 6 Paragraph 2(a).

2.    PLA shall also have the right, at PLA's expense, to defend (including, at its discretion, the taking of appeals) any action, suit or proceeding instituted against PLA based on any claim that any licensed product or service or its manufacture or sale constitutes an infringement of any copyrights or renewal copyrights of the United States or of another country.  LBD shall actively cooperate with and assist PLA in the defense of any such action, suit or proceedings and shall have the right to be represented by counsel at LBD's expense. LBD is not committed to bear any cost of the litigation but may do so if she desires.  But, LBD is committed to help with facts, documents, testimony and information as needed.

3.    In the event PLA elects not to proceed to restrain infringement of a copyright or renewal copyright  included within the licensed copyrights or renewal copyrights within six (6) months after PLA has received written notification from LBD of such infringement, LBD may, at her own expense, start an action to restrain such infringement.  The proceeds from such a suit, action or proceeding shall not be considered income under Section 6 Paragraph 2(a) and PLA shall have no claim against such proceeds.

## SECTION 10: WARRANTIES EXPRESSLY NOT GIVEN

1.    Nothing contained in this document shall be construed by LBD or PLA as a guarantee or warranty on the part of the LBD or PLA with respect to the results to be obtained by the use of the copyrights or renewal copyrights licensed in this document.

PL                 LBD

V3465 D380
Page 14

2.    Nothing contained in this document shall be construed by LBD or PLA as a guarantee or warranty on the part of the LBD or PLA that anything made, used or sold under the license in this document will be free from infringement of the copyrights or renewal copyrights by third parties.

## SECTION 11:  NOTICE

1.    For notice to be effective it must be in writing and sent by United States mail, certified, return receipt requested, postage prepaid, to the address stated above for the recipient.

2.    Either party may notify the other, in the manner above set forth, of any other address to which notices may be addressed to it under this agreement.

## SECTION 12: TERMINATION

1.    If PLA becomes bankrupt and/or if the business of PLA is placed in the hands of a receiver or trustee, whether by the voluntary act of the PLA or otherwise, this agreement shall immediately terminate.

2.    Upon any breach of this agreement or default on the terms of this agreement by PLA, LBD will have the option to terminate this agreement after having given ninety (90) days notice in writing as described in Section 11 Paragraph 1 above.  LBD may terminate this agreement at the end of those ninety (90) days if and only if PLA has not cured the breach or default of the agreement.

PL                                      LBD

Law Offices of David L. M. 6617750591    P. 19

V3465 D380
Page 15

Agreement
Page 15

3.    PLA's failure to pay royalties as described in Section 6 Paragraphs 2(a-c) shall be considered a default and in such a situation the cancelling of the license will not end LBD's claim to the royalties owed.

4.    PLA may terminate the license upon six (6) months notice according to Section 11 Paragraph 1.

5.    After the agreement is terminated, all income from sublicensees in effect at the time of termination but continuing after termination, earned after the date of termination, shall continue to be paid as provided by this agreement.

### SECTION 13:  TERM OF THE LICENSE

1.    The license that is the subject of this agreement shall be for the life of the copyrights and renewal copyrights, as long as PLA pays a minimum of one thousand dollars ($1,000.00) in royalty payments, as covered by this agreement, per calendar year.

### SECTION 14:  THE TERM OF THE AGREEMENT

1.    The term of the agreement is the same as the term of the license. That term is for the life of the copyrights and renewal copyrights, as long as PLA pays a minimum of one thousand dollars ($1,000.00) in royalty payments, as covered by this agreement, per calendar year.

### SECTION 15:  MISCELLANEOUS PROVISIONS

1.    The rights granted under this agreement shall be enforceable upon LBD, her

PL                    LBD

Law Offices of David L. F. 681/750397                                              P. 20

V3465 D380
Page 16

Dane/PL&A, Inc.
Agreement
Page 16

successors in the ownership of the copyrights and anyone the copyrights may be assigned to.

The rights granted under this agreement shall come into force upon PLA, its successors in the

ownership of the whole business or any assignees of the ownership of the whole business who

may acquire this license as part of the transfer of the part of PLA's entire business to which

this agreement relates.  Prompt notification of any such assignment shall be given to the other

party to this agreement according to Section 11 Paragraph 1 above.

    2.     No amendment or modification of this agreement shall be binding unless it is in

writing and signed by both parties or their properly authorized officer or representative.

    3.     This agreement, to the extent that it does not fall under the COPYRIGHT ACT

OF 1976 (17 United States Code Annotated, Sections 101-810), shall be construed according

to the laws of the State of Florida and is subject to the applicable tax laws of the United

States and any political subdivision of the United States.

### SECTION 16:  MEDIATION OF DISPUTES

    1.     All disputes that are not resolvable by the parties shall be submitted to non-

binding mediation by a mediator who is agreed upon by both LBD and PLA.

PL                    LBD

Law Offices of David L. H    6817750391    P. 21

V3465 D380
Page 17

Agreement
Page 17

## SECTION 17:  EXECUTION OF THE AGREEMENT

To show their agreement, the parties to this agreement have placed their original
signatures below and have caused this agreement to be fully executed as of the day and year
first written above.

30 Dec 93
Date

Mrs. Lois B. Dane

3 Jan 94
Date

Peter Letterese, Chief Executive Officer
Peter Letterese & Associates, Inc.

Ratified and agreed with respect to all Les Dane copyrights renewed and to be renewed:

Lois Dane Richter

Dated   12 - 30   , 19 93

Leslie Achilles Dane Jr.

Dated   12 - 30   , 19 93

Elizabeth Dane Shook

Dated   17 Dec   , 19 3

John Bentz Dane

Dated   12 - 30   , 19 73

Jennifer Michelle Dane

Dated   12 - 31   , 19 93

Malcolm Ezra Dane

Dated   12 - 31   , 19 73

# EXHIBIT "B"

## ASSIGNMENT OF COPYRIGHT

KNOW ALL MEN that we, PRENTICE-HALL CAREER & PERSON DEVELOPMENT (hereinafter called the "Assignor") in consideration of value received from PETER LETTERESE & ASSOCIATES, INC. (hereinafter called the "Assignee"), hereby assigns to the Assignee all our rights, title and interest and copyright thereof, and in all renewals and extensions that may be secured under the laws, now or hereafter, in force and effect, in the United States ond in any other country or countries in and to SUREFIRE SALES CLOSING TECHNIQUES by Les Dane, originally published as BIG LEAGUE SALES CLOSING TECHNIQUES, also informally known as Effective Sales Closing Techniques and registered in the United States Copyright Office under PARKER PUBLISHING COMPANY.

IN WITNESS WHEREOF, GRACIELA LI has executed this statement on the 12th day of July, 1994.

PRENTICE-HALL CAREER AND PERSONAL DEVELOPMENT,
a division of Prentice-Hall, Inc.

By _____


_____
GRACIELA LI
(Print name of signatory)

_____
PUBLISHER
(Position of signatory)

# COMPOSITE EXHIBIT

## "C"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN RE:

CREATIVE DESPERATION INC.

Debtor In Possession

Case No 08-19067 BKC JKO
Chapter 11

NOTICE OF FILING OF RESTATEMENT MEMORANDUM OF TERMS OF JANUARY 2006 ASSIGNMENT

COMES NOW PETER LETTERESE AND BARBARA LETTERESE, Shareholders of the Debtor CREATIVE DESPERATION INC. ("Debtor") and as a party in interest, who by and through their undersigned attorney files this Restatement Memorandum of Terms of January 2006 Assignment.

I hereby certify a true and correct copy of the foregoing was sent by electronic mail this 5 day of November 2008 to following:

U.S. Department of Justice
Office of the United States Trustee Suite 1204
51 S.W. First Avenue
Miami, FL 33130

Alan Pearlman Esq.
Adorno and Yoss PA
350 East Las Olas Blvd Suite 1700
Fort Lauderdale, FL 33301

Edwards Angell
One North Clematis Street #400
West Palm Beach Fl 33401

John Genovese and Barry Gruher

Marika Tolz

Nemia Shulte

CHARLES D. FRANKEN PA
Attorney for Shareholders
8181 W. Broward Blvd Suite 360
Plantation, Fl 33324
Tel (954) 476-7200
Fax (954) 424-0297
e mail frankencdf@aol.com
By:_____/s/ Charles D. Franken

CHARLES D. FRANKEN FBN 224251

I hereby certify that a true and correct copy of was served

by U S. Mail this 5 day of November 2008 on the following:

Barbara Fawcett
4581 Weston Rd 306
Weston Fl 33331

Dr Douglas Ness
1400 W Benson Blvd Suite 150
Anchorage Alaska

Dr. Marc Schwartz
1600 El Camino Real Suite A
Belmont CA 94002

Dr. Scott Brody
1025 S. Perry Street Suite 105
Castle Rock CO 80104

Ford Motor Credit
POB 105697
Atlanta GA 30330

Internal Revenue Service
Atlanta GA 30303

Kendrick Moxon Moxon & Korbin
3055 Wilshire Blvd  Suite 900
Los Angeles CA 90010

Levey Airam
555 NE 15th St 104
Miami Fl 33132

Arnstein & Lehr PA
200 E Las Olas Blvd # 1700
Ft Lauderdale Fl 33301

Bohlig Julaine
1320 NE 7th Avenue # 3
Fort Lauderdale Fl 33304

Division of Corporation State of Fl
PO Box 6327
Tallahassee Fl 32314

Figueroa Mirtha
5610 Hood Street
Hollywood Fl 33021

2

Gallert Dreyer & Berkey
845 3rd Avenue # 8
New York, NY 10022

Haviland Darin
2481 NW 87th Avenue
Sunrise Fl 33332

Letterese Peter
Letterese Ramona
4581 Weston Road 285
Weston Fl 33331

MCI Communications
One Verizon Way
Basking Ridge NJ 07920

Monge, Jose Luis
5610 Hood Street
Hollywood Fl 33021

Press Martin
Broad & Cassell
100 SE 3rd Avenue Suite 2700
Ft Lauderdale Fl 33394

Public Storage
701 Western Avenue
Glendale CA 91201

SEC Commercial Realty Group
7050 West Palmetto Park Rod # 51
Boca Raton Fl 33433

Shurgard Storage Centers
701 Western Avenue
Glendale CA 91201

Sprint Communications
6500 Sprint Parkway Suite HL-5A
Overland Park KS 66251

State of Florida
6565 Taft Street Suite 300
Hollywood Fl 33024

Stor All Ltd
1375 West Hillsboro Blvd
Deerfield Beach Fl 33442

Tomilson John CPA
500 West Cypress Creek Rd Suite 455

3

Ft Lauderdale Fl 33309

Tree Trimmers & Associates
4301 NE 13th Terrace
Oakland Park Fl 33334

Verizon Wireless Telecom
One Verizon Way
Basking Ridge NJ 07920

Wandique Casta
Wandique Mauro
5610 Hood Street
Hollywood Fl 33021

<div style="margin-left:40%;">

CHARLES D. FRANKEN PA
Attorney for Shareholder
8181 W. Broward Blvd
Suite 360
Plantation, Fl 33324
Tel (954) 476-7200
Fax (954) 424-0297

By:___/s/ Charles D. Franken___
     CHARLES D. FRANKEN FBN 22425

</div>

4

## RESTATEMENT MEMORANDUM OF TERMS OF JANUARY 2006 ASSIGNMENT

This Memorandum dated 4 November 2008, Peter Letterese as principal officer of Peter Letterese & Associates Inc. a Florida Corporation ("PLA") and MGSI INC. a Delaware Corporation ("MGSI") hereby execute this Memorandum of Terms of Assignment that occurred in January 2006, of that certain December 31, 1993 Agreement between Peter Letterese & Associates Inc. n/k/a CREATIVE DESPERATION INC. and Mrs. Lois (Betty) Dane and her heirs ("Dane Estate") including the December 12, 2005 amendment ("Dane Agreement") relating to copyrighted materials owned by the Dane Estate which materials are exclusively licensed by the Dane Estate to PLA, as follows:

1. On January 16, 2006, MGSI Inc. accepted the assignment of the Dane Agreement from PLA and PLA on January 16, 2006, assigned its rights in the Dane Agreement to MGSI. Since that date, MGSI alone has retained all rights under the Dane Agreement and PLA has not used, possessed or operated the Dane Agreement for itself. Since that date, MGSI alone has used, possessed and operated the Dane Agreement with full knowledge and approval of PLA and the subsequent approval of the Dane Estate.

2. The Power of Attorney held solely by Peter Letterese individually could not be assigned, was never intended to be assigned and therefore was not and never has been assigned or transferred to MGSI or any other party. The Power of Attorney remains a right of Peter Letterese alone.

3. The assignment of the Dane Agreement was expressly permitted under the December 12, 2005 modification by the Dane Estate by PLA to benefit the Dane Estate.

4. PLA warranted to MGSI that the December 31, 1993 Agreement and the December 12, 2005 Amendment were the sole governing documents comprising the Dane Agreement.

5. PLA was unable in 2006 to earn any funds for the Dane Estate or to continue in business (due to violations of the Federal RICO Act perpetrated by the Scientology Worldwide Conglomerate[1] and its surrogates, (now summarized in the Federal RICO Complaint of 15 July 2008[2] and the Amended Federal RICO Complaint 24 October 2008[3]) and was in danger of forcing the Dane agreement into a de minimis status, and

---

[1] Thousands of purportedly "independent" corporations surrounding the globe, which are de facto controlled totally and solely, upon investigation, information and belief illegally, by a handful of Scientology topmost executives [sic].

[2] Plaintiffs PLA and Peter Letterese individually.

[3] Plaintiff Peter Letterese individually.

RESTATEMENT MEMORANDUM OF TERMS OF JANUARY 2006 ASSIGNMENT

would have reduced revenues to the Dane Estate to almost nothing (merely the $1000 minimum royalty payment annually required under the Dane Agreement). This downturn in PLA business resulting from RICO violations of the Scientology Worldwide Conglomerate leading to poor performance; which investigation indicated was due to the ongoing copyright abuse of the Dane copyrighted materials by the Scientology Worldwide Conglomerate in addition to a pernicious economic hate crimes campaign deliberately funded and perpetrated to attempt to destroy Peter Letterese's control over the Dane materials and the inability therefore to PLA to earn a sufficient return from the Dane copyright work.

6. MGSI reviewed the Dane Agreement; the Dane copyrighted works, the Scientology attacks and the market for such materials as well as the funds that PLA had generated from the Dane Agreement prior to accepting the Assignment and the PLA obligations to its customers and was satisfied with the assets being transferred and the assumption of debts and obligations prior to accepting the transfer of assets and the assumption of liabilities.

7. MGSI was aware of the pending copyright and declaratory judgment lawsuits brought by PLA against various Scientology corporate entities as well as any and all entities connected to Scientology, and further expected expenses relating these lawsuits after the assignment, and the difficulty being experienced by PLA to earn sufficient funds for the Dane Estate or for PLA in 2005.

8. Lois Richter, representative of the Dane Estate has accepted and ratified the assignment to MGSI of the Dane Agreement and copyrighted materials.

9. In the years prior to 2006, PLA had paid royalties to the Dane Estate totaling of nearly $200,000.00, which sum was far in excess of the amounts that Dane Estate had earned prior to 1993 for comparable time periods.

10. In January 2003, a covert operative, Virginia-licensed PI (posing as an author for Bridge Publications) Michael Middleton of The Scientology Worldwide Conglomerate unsuccessfully offered the Dane Estate a contract worth $10,000.00 to attempt to lure the Dane Estate to terminate the Dane Agreement with PLA and to be the assignee.   The Dane Estate refused the Scientology Worldwide Conglomerate offer based upon the Dane Agreement which did not permit the Dane Estate to terminate the license except for non performance by PLA. Further the Dane Estate did not desire to do any business with the Scientology Worldwide Conglomerate who demonstrated an unwillingness to provide funds to the Dane Estate.

11. The fair market value of the copyrighted materials owned by the Dane

2

2

RESTATEMENT MEMORANDUM OF TERMS OF JANUARY 2006 ASSIGNMENT

Estate to any publisher was minimal, as the book was not in print and was not widely used in the public.

12. The Scientology Worldwide Conglomerate has claimed the copyrighted materials as a minimal value, both as part of their argument before the Federal copyright court as the Scientology Worldwide Conglomerate has claimed that it can use the materials as part of their fair use without violating the Dane copyrights.

13. PLA had borrowed over a period of time funds from MGSI to seek to operate the business.

14. As of December 2003, PLA had borrowed with the help of MGSI's principal, for a total $450,000.00 in several expansion loans, which, once the economic hate campaign began, PLA could not repay.

15. By January 2006, PLA had incurred $400,000 in unpaid legal fees in defending the copyright of the Dane Estate, which PLA was obligated to perform for the Dane Estate under the Dane Agreement. PLA lacked the ability in January 2006 to pay this debt.

16. PLA had additional legal fee exposure to continue to defend the Dane copyright materials, which PLA lacked the ability to pay.

17. PLA would not abandon the Dane Estate by terminating the Dane Agreement for non-performance, but sought to protect the Dane Estate by virtue of assigning the Dane Agreement to MGSI who agreed to protect the Dane Estate and had the ability to defend the rights of the Dane Estate.

17. MGSI through its principals was familiar with Dane copyrighted materials. MGSI had developed a business plan to protect the Dane copyrighted materials and to continue to pay royalties to the Dane Estate and to earn funds from the use in part of the Dane copyrighted materials.

18. MGSI and PLA agreed the consideration for the assignment of the Dane Agreement to MGSI from PLA, paid by MGSI to PLA was:

    a. MGSI and its principal forgave the $450,000 loans, un-repayable on schedule by PLA for the loans it obtained for PLA.

    b. MGSI assumed and is paying down the $400,000 for legal fees owed by PLA for defending the Dane Copyrights.

3

RESTATEMENT MEMORANDUM OF TERMS OF JANUARY 2006 ASSIGNMENT

        c. MGSI agreed that it would continue to pay additional legal fees for PLA to protect the copyright and to seek to recover funds due to PLA from the Scientology Worldwide Conglomerate and its related entities which to date has totaled over $200,000.00 paid and another $250,000 incurred.

        d. MGSI would continue to pay royalties to Dane Estate. For work performed by MGSI for the Dane Estate.

        e. MGSI assumed full obligation and responsibility to provide all of their servicing of approximately 300 PLA contracts with the PLA customers, which contracts have been paid by the contracting parties in full to PLA (prior to the date of assignment) to protect PLA from being sued for non performance. To date, the only suits against PLA for non-performance have been instituted at the bequest of the Scientology Worldwide Conglomerate as part of their RICO actions and none other.

        f. MGSI    accepted the assignment of all rights under the Dane Agreement, but Peter Letterese would continue to use his non-transferable Power of Attorney with respect to these rights and provide supervisory responsibility for the protection of the rights of the Dane Estate, to the end of the term of the contract.

        g. MGSI accepted the transfer of all trademarks, service marks and copyrights all intellectual property) and all equipment, personal property, research materials the assignment of all rights previously belonging to PLA, including all materials developed by Peter Letterese, which intellectual properties had been damaged in the market place by the Scientology Worldwide Conglomerate.

        19. Peter Letterese individually has agreed without consideration paid to Peter Letterese, except for payment of expenses to assist MGSI for the Dane Estate as part of the assignment.

        20.    MGSI has continued to perform the Dane Agreement and has paid royalties to the Dane Estate.

        21.    This memorandum is executed to document the terms of the assignment between MGSI and PLA in January 2006.

        22.    The parties hereto, acknowledge that the terms of the assignment as agreed upon by MGSI and PLA are set forth above and encompass all of the terms of the assignment.

RESTATEMENT MEMORANDUM OF TERMS OF JANUARY 2006 ASSIGNMENT

23. The rights under the Dane Agreement were assigned for fair and just consideration to MGSI in January 2006 and such rights under the Dane Agreement have hereafter belonged to MGSI from January 2006.

IN WITNESS WHEREOF the parties have signed this Memorandum of the Terms of Assignment to provide a written acknowledgment to their agreement.

_____ Nov. 4, 2008
Witness

_____ Nov. 4, 2008 /Date:____

_____ Nov. 4, 2008
Witness

PETER LETTERESE
As Principal officer
Peter Letterese &
Associates Inc., k
nka Creative Desperation, Inc.

X _____ Nov. 4, 2008
Witness

_____ Nov. 4, 2008
Witness

_____ Date: 11-4-08

MGSI INC. by
THOMAS KARAS President

5