Page 1

```
 1              UNITED STATES BANKRUPTCY COURT
                 SOUTHERN DISTRICT OF FLORIDA
 2

    IN RE:                       CASE NO.08-19067-BKC-JKO
 3
    CREATIVE DESPERATION, INC.,
 4
            Debtor.
 5  _____/
    MARIKA TOLZ,                  CASE NO.09-1649-BKC-JKO-A
 6
            Plaintiff,
 7  vs.
 8  MGSI, INC., a/k/a
    MGSI-Karas, a Delaware
 9  Corporation,
10          Defendant.
    _____/
11  IN RE:                       CASE NO.08-19642-BKC-JKO
12  PETER LETTERESE,
13          Debtor.
    _____/
14    MOTION FOR RELIEF FROM STAY (364); ORDER SETTING
        STATUS CONFERENCE(393); EMERGENCY MOTION FOR
15   CONTEMPT, MOTION FOR SANCTIONS AGAINST CREATIVE
     DESPERATION, INC. (397); PARTIAL MOTION TO VACATE
16     (398); EMERGENCY MOTION FOR CONTEMPT, MOTION FOR
     SANCTIONS AGAINST PETER LETTERESE & ASSOCIATES AND
17    THEIR COUNSEL, SHERRI B. SIMPSON, ESQUIRE (232);
    MOTION TO VACATE (233); FOURTH MOTION TO EXTEND TIME
18     (238); ORDER SETTING STATUS CONFERENCE (29)
19                  December 9, 2009
20          The  above-entitled   cause   came   on   for
    hearing  before   the HONORABLE JOHN K. OLSON, one  of
21  the judges  of  the  UNITED STATES  BANKRUPTCY COURT,
    in and for the SOUTHERN DISTRICT OF FLORIDA,  at   299
22  East  Broward   Boulevard,  Fort  Lauderdale, Broward
    County, Florida on  December 9, 2009, commencing  at
23  or about  3:00 p.m., and  the  following  proceedings
    were had:
24
25            Reported By:  Bonnie Tannenbaum
```

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

```
 1                    APPEARANCES:
 2           GENOVESE JOBLOVE & BATTISTA, P.A., by
             JOHN H. GENOVESE, ESQUIRE,
 3                    and
             BARRY P. GRUHER, ESQUIRE,
 4           On behalf of Trustee, Marika Tolz
 5
             RAPPAPORT OSBORNE & RAPPAPORT, P.L., by
 6           TAREK K. KIEM, ESQUIRE,
             On behalf of Trustee, Leslie S. Osborne
 7
 8           CHARLES D. FRANKEN, P.A., by
             CHARLES D. FRANKEN, ESQUIRE,
 9           On behalf of Charles D. Franken and
             Charles D. Franken, P.A.
10
11           ADORNO & YOSS, LLP, by
             ALAN J. PERLMAN, ESQUIRE,
12           On behalf of Church of Scientology
             and Bridge Publications
13
14           EDWARDS ANGELL PALMER & DODGE LLP, by
             SIMEON D. BRIER, ESQUIRE,
15           On behalf of Doctors Schwartz, Brody &
             Ness
16
17           LAW OFFICES OF SHERRI B. SIMPSON, P.A., by
             SHERRI B. SIMPSON, ESQUIRE,
18           On behalf of the Law Offices of Sherri
             B. Simpson, P.A., MGSI and Peter Letterese
19
20           LAW OFFICES OF NEMIA L. SCHULTE, P.A., by
             NEMIA L. SCHULTE, ESQUIRE,
21           On behalf of the Debtor, Creative
             Desperation
22
23                    ALSO PRESENT
24           CHRISTINA ROMERO, COURTROOM DEPUTY
             WILLIAM HOWELL, LAW CLERK
25                    _ _ _ _ _ _
```

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

1          THE COURT:  Let me take appearances in

2    Creative Desperation, please.

3          MR. BRIER:  Good afternoon, Your Honor,

4    Simeon Brier on behalf of the debtors, Schwartz, Ness

5    and Brody -- creditors, excuse me.

6          MS. SIMPSON:  Good afternoon, Your Honor,

7    Sherri Simpson appearing on behalf of Peter

8    Letterese, MGSI, and I suppose, myself, as well, in

9    both cases, Creative Desperation, as well as Peter

10   Letterese.

11         MR. GENOVESE:  Good afternoon, Your Honor,

12   John Genovese, Genovese Joblove & Battista, along

13   with my partner, Barry Gruher, on behalf of Marika

14   Tolz, the Chapter 7 Trustee of Creative Desperation.

15         THE COURT:  Good afternoon.

16         MR. PERLMAN:  Good afternoon, Judge, Alan

17   Perlman on behalf of Church of Scientology and Bridge

18   Publications.

19         THE COURT:  Good afternoon.

20         MR. PERLMAN:  Thank you.

21         MR. FRANKEN:  Good afternoon, Your Honor,

22   Charles Franken on the adversary proceeding, Tolz

23   versus MGSI, for Charles Franken and Charles D.

24   Franken, P.A.

25         THE COURT:  Good afternoon.

```
 1              MR. KIEM:  Good afternoon, Judge, Tarek
 2    Kiem on behalf of the trustee, Les Osborne.
 3              THE COURT:  Thank you, Mr. Kiem.
 4              Okay.  Is there a suggested order in which
 5    we take these matters?  Mr. Brier, you're rising.
 6              MR. BRIER:  Yeah, just because I think it
 7    will be brief, Judge.  I have a pending emergency
 8    motion for contempt, and I think we can weed through
 9    it pretty quickly.
10              THE COURT: Okay.  Ms. Simpson.
11              MS. SIMPSON:  Two problems.  Number one, I
12    think a motion for contempt needs to be heard on the
13    evidentiary calendar.  And number two, I want to ask
14    this Court if all attorneys in this room are bound by
15    the same rules?
16              THE COURT:  If you could -- if you would
17    like to articulate that in a slightly more specific
18    fashion.
19              MS. SIMPSON:  I assume attorneys bound in
20    this courtroom are bound by the local rule that says
21    that attorneys, prior to filing motions, are supposed
22    to contact the other side and see if they can resolve
23    the issue, and also, prior to setting hearings, are
24    supposed to contact the other side and see if they
25    can resolve any issues.
```

1          THE COURT:  Well, those are the local
2    rules, Ms. Simpson.  Of what is it you are
3    complaining?
4          MS. SIMPSON:  Well, I would -- the motion
5    for sanctions was filed without any phone call, any
6    opportunity to cure any alleged defect that may have
7    been in there, of which I will admit there was one,
8    and it was based on a cut and paste.  Flora Ness,
9    who was not in the motions that were filed, was left
10   out of the dismissal for Letterese and CDI.  And she
11   was left out only because there's a Theodossakos
12   Antoinette, I think -- I didn't want to misspell
13   anybody's names, so I cut and pasted from the order,
14   the big order, the sale order, I cut and pasted.  I
15   cut and pasted from the top portion.  The top portion
16   didn't have her name in it.  If he had called me --
17   and, by the way, that has been corrected as of now.
18          But if he had called me to let me know
19   that, I certainly would have said, that was an
20   oversight, I apologize, I cut and pasted, I cut and
21   pasted from the wrong part of the order, or an order
22   that didn't have her name in it, because your motion
23   didn't have her name it.
24          THE COURT:  Okay.
25          MS. SIMPSON:  So for that, I apologize, and

 1  for that, I think that this shouldn't -- really

 2  shouldn't be heard, because I think he had an

 3  obligation to call me first.  I don't think that's

 4  fair.

 5          MR. BRIER:  Your Honor, if I can respond.

 6  Number one, I didn't set the hearing for today.  We

 7  filed a motion.  Your Honor advised us, or Your

 8  Honor's office advised us, Your Honor was going to

 9  hear it today.

10          Number two, I think the record will reflect

11  I have pounded my head over the last month-and-a-half

12  to get these dismissals filed.  We came before Your

13  Honor on multiple hearings, arguing about these very

14  issues, the nature of the dismissals, who was going

15  to file them, the scope of the dismissals, what was

16  to be included.

17          During the week after your November 6th

18  order was entered, we had multiple discussions with

19  Ms. Simpson, and with Nemia Schulte, over who had

20  authority to file these dismissals.  My only issue

21  was, I don't care who has authority to file these

22  dismissals, you guys figure that out, I want to get

23  them filed by the deadline that the court order

24  imposed.  They were not.  They were filed with

25  regards to some parties, Flora Ness was excluded.

1   CDI -- excuse me, MGSI filed this magical creation

2   called a conditional dismissal with prejudice, which

3   I've never heard before, saying, we dismiss with

4   prejudice, subject to every right in the book that we

5   have to set it for rehearing, to seek vacating, to

6   appeal, et cetera, et cetera, just a manufactured

7   pleading, and I'm here today exhausted.  I just want

8   the dismissals filed.  I want the litigation ended,

9   and that's it.

10          We're here today on what I believe is an

11  untimely motion to vacate by Sherri Simpson.  She

12  didn't call me on that motion.  I mean, it's just

13  absurd, but we're here today, we've got an emergency

14  motion for contempt pending.  My only request, and

15  Your Honor can deem whether sanctions are

16  appropriate, I know I've requested them, but my only

17  request is that the dismissals get filed properly,

18  and the litigation that my clients have had to bear

19  for the last several years, end, pursuant to the

20  agreement of Ms. Simpson and her clients.

21          THE COURT:  Okay.  Is Flora Ness,

22  Ms. Simpson, dismissed as a party in each of the

23  adversary proceedings to which she is a party by all

24  of your clients?

25          MS. SIMPSON:  Not MGSI, no, Your Honor.

1           THE COURT:  Why?

2           MS. SIMPSON:  Well, because, look at Docket

3  Entry 405 in the Creative Desperation case.  There

4  are three attachments to it, three exhibits.

5           THE COURT:  And what is it I'm supposed to

6  learn from Docket Entry 405, Ms. Simpson?

7           MS. SIMPSON:  Docket Entry 405 will inform

8  this Court that in the due process, the so-called due

9  process case, there was a specific order that was

10 entered by the Judge back in September of 2008, which

11 Mr. Brier was well aware of, that struck --

12          THE COURT:  All right.  Folks, I am not

13 going to put up with juvenile behavior from anyone;

14 do you understand?

15          MS. SIMPSON:  I do.

16          THE COURT:  Thank you.  Would you act like

17 a lawyer, then, Ms. Simpson, instead of like someone

18 who, perhaps, should not be practicing here?

19          MS. SIMPSON:  Your Honor, I'm upset.  I

20 should be upset.  If you look at Exhibit B to that,

21 in September of 2008, Ungaro, on her own motion,

22 entered an order that struck MGSI as anything in that

23 due process case.  There was no basis for me to file

24 anything in the case.

25          THE COURT:  Okay.  So MGSI is not a party

1    in the due process case, you're telling me?

2              MS. SIMPSON:  And they're not a party in

3    the RICO case, either.  The reasoning in Ungaro's

4    motion was that, specifically, a notice, parties may

5    not be joined by mere notice.  Plaintiffs have failed

6    to amend their complaint to include MGSI, Inc.

7    Accordingly, it is hereby ordered and adjudged that

8    the notice of joinder of MGSI is stricken.

9              So I did some research into the case law.

10   Mr. Franken, in the RICO case, did the exact same

11   thing, he filed a notice.  He didn't file an amended

12   complaint, he didn't file a motion to amend the

13   complaint.  They're not a party in that -- but I did

14   file -- now, the other issue --

15             THE COURT:  You did file what, Ms. Simpson?

16             MS. SIMPSON:  I filed in the RICO case,

17   since there wasn't a specific order that said that it

18   was stricken, and it says it's stricken on the

19   docket, as well, that MGSI is stricken, because there

20   was not a specific order that says that it's

21   stricken, although it was done under the same

22   context, and with the same forms, I filed -- first of

23   all, this Court ordered us to file the dismissal

24   within five days, where MGSI had at least ten days to

25   file a motion to vacate, and under 60(b), had a

1   reasonable period of time to file a motion against

2   that order.

3          So we had an extra five days.  I complied

4   to the best of my ability, given the standards, and I

5   filed a conditional, and I said in it that the --

6   that MGSI was dismissing all of those people, the APD

7   group, but it was under the condition that the order

8   that Your Honor entered with respect -- or that

9   portion of the order that Your Honor entered became

10  final, because MGSI's appeal rights hadn't expired,

11  their rights to move to vacate hadn't expired.

12         So if I had issued a notice of voluntary

13  dismissal in and of itself, how do you reverse that?

14  At least if it's conditional, it either becomes final

15  when all the hearings, and motions, and appeals have

16  been completed, or at least it's there, it's

17  dismissed, or it will be overturned on either a

18  motion to vacate, a motion for rehearing, motion for

19  reconsideration, or an appeal.  So I complied to the

20  best of my ability while protecting my client.

21         Now the other thing in both of these cases

22  is both of these cases are closed.

23         THE COURT:  Both of what cases are closed?

24         MS. SIMPSON:  The RICO and the due process

25  case are both closed.  We've just all filed documents

1  in a closed case without moving to re-open or

2  anything.  Everything has been closed.

3          So, because of the electronic filing, I

4  guess we're able to do so.  And I didn't really think

5  about it, because we're able to file.  Mr. Gruher

6  just pointed out that the cases are -- or he asked if

7  the cases were closed, which I confirmed by the

8  dockets.  The cases have been closed.  So we all

9  filed stuff in a closed case on top of it.

10         But I complied.  I complied to the best of

11  anybody's ability under the circumstances that my

12  client, MGSI, was put in.  It's not Peter Letterese

13  or CDI.  The Flora Ness thing was just a cut and

14  paste error, and if he called me, I certainly would

15  have corrected it even faster than I did when I

16  realized that that was an error.

17         THE COURT:  Okay.  So that I understand

18  completely, Mr. Brier, your perspective, are you

19  satisfied that Flora Ness has been dismissed from the

20  adversary proceedings in a manner that is

21  satisfactory to you by everyone other than MGSI?

22         MR. BRIER:  Yes, Your Honor.  There was a

23  second amended notice of voluntary dismissal, which

24  was just filed on Monday, including Flora Ness.  And

25  while I have an issue with the fact that Ms. Simpson

1  unilaterally imput -- put in, with each party to bear

2  its own fees and costs, we'll get past that issue,

3  because I don't think it's binding on anyone, but

4  there is now a second amended notice of dismissal

5  with prejudice on behalf of CDI, and I believe --

6  I've got to look, but I believe Peter Letterese

7  individually, which includes Flora Ness.

8              THE COURT:  Okay.

9              MR. BRIER:  In the Zloch matter.

10             THE COURT:  Okay.

11             MS. SIMPSON:  No, in both cases, Your

12  Honor, and I filed those with the Court, both notices

13  were filed --

14             MR. BRIER:  Yeah, they were both filed, I

15  think, the same day.

16             MS. SIMPSON:  Yes.

17             MR. BRIER:  The amended notice.

18             THE COURT:  Okay.  So the only issue, from

19  your perspective, Mr. Brier, is the conditional

20  nature of the dismissals by MGSI?

21             MR. BRIER:  And that they -- even the

22  conditional dismissals by MGSI initially did not

23  include Flora Ness.

24             THE COURT:  Right.

25             MR. BRIER:  Now they've been amended --

1          MS. SIMPSON:  No, that one has not, Your

2    Honor, I'm sorry.

3          MR. BRIER:  They've been amended, but even

4    the amended conditional notice of voluntary dismissal

5    with prejudice does not include Flora Ness.

6          THE COURT:  Why is that, Ms. Simpson?

7          MS. SIMPSON:  Honestly, because I had filed

8    the motion to vacate in both cases, and I will go

9    ahead, if this Court upholds that order, and the

10   Appellate Court upholds the order, and all that kind

11   of good stuff, I will go ahead and I'll amend it, or

12   I can amend it under the conditional.  I just didn't

13   get to it, and with the motion to vacate pending, I

14   didn't think that it was really appropriate to then

15   say, okay, I'm going to file another conditional --

16   he's mad I'm filing one conditional, and now I'm

17   going to file another conditional.

18          But I would represent that if this Court,

19   or an Appellate Court ultimately orders that that be

20   done, I absolutely will do so.

21          THE COURT:  Okay.

22          MS. SIMPSON:  I'm not trying to violate any

23   court orders, I'm just trying to protect my clients,

24   and comply with the court orders to the best of my

25   ability.

1          THE COURT:  Well, let's talk about the

2     motions to vacate.  It seems to me that the only

3     issue involves whether MGSI effectively agreed to the

4     dismissal of your clients, Mr. Brier.

5          MR. BRIER:  Correct.

6          THE COURT:  Ms. Simpson was regularly

7     consulting Mr. Letterese during the course of that

8     hearing.  I am wondering if I should not set an

9     evidentiary hearing on whether Mr. Letterese had the

10    authority to bind MGSI.  It certainly appeared to me

11    that Ms. Simpson had the authority to act as she did,

12    and I've already ruled that way.  Ms. Simpson's

13    argued some law that suggests that the mere fact that

14    a lawyer says she has the authority to act, and

15    represents such to the Court, doesn't give her the

16    authority to act.

17          However, Mr. Letterese was in the

18    courtroom, and the suggestion has certainly been made

19    in the course of this case that Mr. Letterese has a

20    relationship with MGSI, the precise nature of which

21    has never been determined.

22          If it is the case that Mr. Letterese does

23    have the authority to bind MGSI, then it seems to me

24    that there is absolutely no basis for Ms. Simpson to

25    move to vacate the order that was entered, since MGSI

1    then would have had the authority present in the

2    courtroom whom Ms. Simpson regularly consulted during

3    the course of that hearing.

4            On the other hand, if Mr. Letterese is a

5    stranger to MGSI, a proposition I find utterly

6    dubious to believe, then perhaps there was no

7    authority present to bind.

8            What is your reaction to those

9    observations, Mr. Brier?

10           MR. BRIER:  Your Honor, I think your

11   observations are correct, number one.  Number two, I

12   don't know what Ms. Simpson spoke about with anyone

13   else on behalf of MGSI.  These issues were not new to

14   the Court, or to Ms. Simpson the day of that hearing.

15   These issues were discussed at a prior deposition of

16   Mr. Letterese.  These issues were never a problem

17   prior to that hearing date.  And, in fact, it was

18   a -- what I believed to be a routine concession that

19   we had already talked about in principle the date of

20   the November hearing.

21           So I don't know if Mr. Karas would also

22   need to be present and advise whether or not he gave

23   Ms. Simpson authority.  I certainly, from my

24   perspective, based upon the fact that she is counsel

25   to MGSI, based upon the fact that we had discussions

1  of these issues prior, based on the fact that we had

2  a discussion that day, and there was no reluctance on

3  her part to state that she affirmatively had the

4  ability to agree to this concession, to agree to this

5  stipulation.  It was a non-issue in my mind.

6          I certainly believed that she had the

7  apparent authority, relied upon that, and if Your

8  Honor recalls, it was because we were wrapping

9  everything up in a nice neat bow that this

10 settlement, or proposed settlement, went forward.

11 And so I'm baffled, candidly.

12          THE COURT:  Ms. Simpson.

13          MS. SIMPSON:  First of all, under Florida

14 law, which is applicable here, because there is no

15 federal agency law, the agency can't be proven by the

16 agent, the agency has to be proven by the principal.

17          So it does require an evidentiary hearing,

18 and there has to be some act or evidence on the part

19 of the principal that would have led Mr. Brier to

20 believe that I had the authority to act.

21          Now, he brought up -- Mr. Brier brought up

22 the deposition, and we never spoke of MGSI.  However,

23 Mr. Letterese made it abundantly clear, and that depo

24 was filed in this case, and I brought that up at the

25 hearing, that he was not entitled to speak for MGSI.

1    That was evidence that was part of this case at a

2    non-evidentiary hearing, but there was evidence that

3    was indicative that he could not bind, and he'd

4    informed Mr. Brier of that fact at the deposition,

5    number one.

6              Number two, the bigger problem here is,

7    Your Honor, I don't think there's subject matter

8    jurisdiction or jurisdiction over MGSI in anything

9    other than the adversary complaint, because MGSI is

10   not a party, obviously, in the due process case, and

11   more than likely, in the RICO case.

12             So what is MGSI dismissing?  You know, is

13   he asking for Your Honor to enforce a stipulation

14   that was never entered into or executed to dismiss

15   any possible causes of action that MGSI could have

16   had?  They're not a plaintiff.  They're not a party.

17   They were stricken from one, and the same exact

18   notice is what causes them to even be a named entity

19   in any way, shape or form, which does not appear on

20   the docket as a plaintiff, and does actually not

21   appear anywhere, other than in the notice of filing

22   MGSI as an interested party.

23             MR. BRIER:  Your Honor, to the extent that

24   this issue was broached, it was at the prior hearing.

25   We talked about the fact that there was confusion,

1  and I acknowledged confusion about what Mr. Franken

2  did on behalf of MGSI in both of these actions, about

3  the fact that he tried to add in or tag along MGSI,

4  likely to get around the automatic stay that the

5  trustee had requested on behalf of CDI and Peter

6  Letterese, but that he tried to tag on MGSI as an

7  additional plaintiff in both the Zloch and Ungaro

8  matters.

9           And we talked about the fact that to the

10 extent MGSI was a plaintiff or had claims that were

11 asserted in those sanctions, they would agree to

12 dismiss them with prejudice against my clients.

13          So there may be an order in the Ungaro

14 action, which was dismissed entirely by Judge Ungaro

15 sua sponte without prejudice, but in the Zloch

16 action, there is no order, there is no dismissal of

17 MGSI.  You can argue -- one can argue that what

18 Mr. Franken did was improper, but there's no ruling

19 from Judge Zloch saying they're not a plaintiff, or

20 they haven't asserted a claim.

21          And so, therefore, we agreed that whatever

22 it was, whatever you want to call their role in those

23 respective litigations, they would agree to dismiss

24 them with prejudice.

25          MS. SIMPSON:  So, Your Honor --

Page 19

1          THE COURT:  Mr. Genovese.

2          MR. GENOVESE:  May I be heard briefly, Your

3    Honor?

4          THE COURT:  Yes.

5          MR. GENOVESE:  You might ask, what is our

6    interest in this?  Our interest is pretty clear

7    representing the trustee.  I don't know if the Court

8    is aware there's a notice of filing, the $250,000 has

9    been paid in compliance with your order.

10          THE COURT:  I saw that you had filed that.

11          MR. GENOVESE:  We would be absolutely

12    thrilled if the balance of the payments under the

13    agreement are paid.  We don't want this issue, or an

14    appeal from this issue, to cause the order to become

15    non-final in some respect, or chill the buyer's

16    willingness to close.  That's the estate's interest

17    in having an appropriate record, and in getting the

18    balance of the funds.

19          Frankly, I was surprised, given everything

20    that occurred, that we got the 250 timely, because I

21    had my doubts.  I will also say that I've never

22    spoken personally to Mr. Karas, nor anyone that has

23    represented themselves to be his counsel to me.  I'm

24    not even certain at this point of the source of the

25    payment.  I think there's a requirement that that be

1   disclosed, but I'm not aware of the source.

2            When the Court first made the observation,

3   I conclude you have apparent authority, Ms. Simpson,

4   well, my reaction to things was observing -- it

5   appeared that she was acting on behalf of a client.

6   But then it occurred to me, well, having our

7   non-communication with MGSI, having them not appear,

8   that it is, in fact, a question of fact as to the

9   scope of her authority.

10           And we frequently have situations where I

11  represent a creditor, and then an adversary

12  proceeding is filed, and someone asks, will you

13  accept service, and, frequently, counsel says, no,

14  I'm not authorized to accept service of the

15  adversary.

16           So there is an issue of fact to be

17  resolved, and the Court has already given some

18  preliminary observations about Mr. Letterese and his

19  relation to MGSI, but the question is, was

20  Ms. Simpson authorized to bind MGSI.  There may be

21  remedies available to the Court, if the Court feels

22  that, through inadvertence, or inexcusable neglect,

23  that counsel acted inappropriately, but that doesn't

24  necessarily bind the principal.

25           I would like to have a record here, and the

1   Court has already suggested you've now reviewed the

2   law, which we support.  We have no knowledge of the

3   underlying facts, no communications, we would just

4   like there to be an appropriate record so that if

5   there is an appeal, that the record is preserved, and

6   we don't want to do anything that chills the further

7   payment of the amounts due under the sale order

8   because of the uncertainty of the resolution of this

9   issue.  Thank you.

10          THE COURT:  Thank you.  Well, let me back

11  up a little bit, and I do want to hear from

12  everybody, but it's -- the motions that were filed in

13  Creative Desperation, and in the Peter Letterese case

14  by Ms. Simpson seeking to vacate that provision of

15  the order as it relates to MGSI, was filed more than

16  10 days after the order was entered.

17          So, it is, by definition -- yes, it was,

18  Ms. Simpson.

19          MS. SIMPSON:  In the one case, not in the

20  other.

21          THE COURT:  What date was it filed?

22          MS. SIMPSON:  The 16th of November was when

23  Mr. Perlman did a notice of filing.  The order, it

24  never got formally filed.  Mr. Perlman did a notice

25  of filing --

1          THE COURT:  Mr. Howell, would you pull up

2   the docket and just give me a printout of the last

3   few pages.

4          MS. SIMPSON:  And that was on the 16th of

5   the month, and the motion was filed on the 25th,

6   which was within nine days.  So under any -- 59 or

7   60, that's within nine days, and it's the same order.

8          THE COURT:  I'd like to see the docket

9   sheet in both Letterese and in Creative Desperation.

10          MR. PERLMAN:  Judge, if I may just --

11          THE COURT:  Mr. Perlman.

12          MR. PERLMAN:  I just wanted to rise.  These

13   cases were not procedurally jointly administered, but

14   for whatever reason, a series of motions and form

15   orders were prepared in that style.  So, I felt it

16   was appropriate to do a notice of filing in the other

17   case, but I didn't -- I don't think that that changes

18   the fact that they're aware it was entered, and that

19   it was duly styled, and this order, this form of

20   order, was approved by counsel.

21          MR. BRIER:  And that was filed on November

22   10th, Your Honor, by the Court --

23          THE COURT:  Okay.

24          MS. SIMPSON:  It didn't show up.

25          MR. BRIER:  -- or docketed, at least.

1          MS. SIMPSON:  The 13th was when it actually

2     showed up, Your Honor.  So it was two days off in the

3     Creative case, but in the other one, it was nine days

4     after the order was docketed.

5          I had actually e-mailed Mr. Perlman and

6     said, is anybody going to file this thing in the

7     individual case, and he said, I don't know, check

8     with --

9          THE COURT:  If it is styled in both cases,

10    it is deemed as filed in both cases.  The fact that

11    it didn't make it onto the docket in the other one --

12          MR. BRIER:  And it is, in fact, styled in

13    both cases, Your Honor, and it's dated November 10th.

14          MS. SIMPSON:  Your Honor, it's the date

15    entered, the date that it ends up on the docket of

16    the case, which would have been on the 16th of

17    November.  So, again, still within the ten days, but

18    we're doing a 60(b).  This is void.  These -- MGSI

19    doesn't have any interest in either of the RICO or

20    due process cases.  It's not a plaintiff, it doesn't

21    have anything to dismiss, and I saw that on the

22    docket on the one.  That's, again, why I filed in the

23    other one just to try to comply with the court order.

24    Perhaps Your Honor should allow us to go back to

25    Judge Zloch and argue that issue whether or not MGSI

1   is truly a party in the case, or whether, because it

2   was done by notice improperly, and not done on a

3   motion to amend the complaint to add a party

4   plaintiff, and not done or done by an amended

5   complaint, whether they have any interest.

6           You're telling me to file something in

7   cases for people or for entities that then Judge

8   Zloch can come after me and say, you shouldn't file

9   anything on behalf of MGSI.  MGSI doesn't exist in

10  this case, what are you doing.  It's kind of like a

11  wild deed.

12          THE COURT:  Is it the case that MGSI is not

13  a party in the case before Judge Zloch?

14          MR. BRIER:  That's subject to

15  interpretation, Judge.  They were certainly added, or

16  attempted to be added to the Zloch matter by Charles

17  Franken as an additional plaintiff in that action.

18  Whether or not -- now, the case got stayed as a

19  result of, I believe, Trustee Tolz' request, and so

20  we never moved forward.

21          But whether or not they are a plaintiff

22  based upon Mr. Franken's filings on their behalf in

23  an attempt -- in an effort to add them as a plaintiff

24  is an issue subject to interpretation.  Was it

25  procedurally correct?  I'll probably agree with

1   Ms. Simpson that it wasn't procedurally correct, but

2   to the issue of whether or not there's any question

3   that they have a plaintiff, she agreed to dismiss

4   whatever claims they had raised in that action with

5   prejudice clearly on the record.

6            MS. SIMPSON:  Your Honor, like I said

7   before, Mr. Brier was well aware of the Ungaro order,

8   yet he still wanted us to file this in Ungaro,

9   knowing full well that MGSI wasn't, and knowing the

10  content of the order that Judge Ungaro had entered,

11  saying that mere notice alone is not enough to bring

12  a party into the case.

13           So he's wasted, I'm sorry, your time, and

14  all of the rest of our times on this silly issue,

15  when they don't have any rights.  MGSI is not a

16  party.  It doesn't have any causes of action in

17  either of these cases, and it's abundantly clear from

18  the record that it certainly, with respect to the due

19  process case, it didn't.

20           And even in his motion for contempt where

21  he cites -- Mr. Brier cites the paragraph where he

22  said -- he knew that the due process case didn't have

23  MGSI, because he said something about it just being

24  in the RICO case, and I can find that cite that he

25  cited from the hearing, I think the last hearing.

1          And what's been happening is he's doing

2     these emergency motions, and he's causing all of us

3     to jump through hoops.  There's 62 more days until

4     the second half, or the second portion of the monies

5     to be paid.  Mr. Letterese paid the first portion of

6     the money.  What's the rush?  What are we doing?  Why

7     do we have to come in on emergency motions,

8     non-evidentiary calendars, and have evidentiary

9     hearings, or what purport to be?

10          If I had had time, I would have found the

11    docket before.  If the MGSI issue from before had

12    been set timely, instead of on an emergency motion,

13    in a couple of days' notice, I would have pulled the

14    dockets.  I would have seen the dockets.  I would

15    have said, Your Honor, we've got an issue.  But,

16    again, Mr. Brier knew.  He was the attorney of record

17    in those cases.  He knew that this order existed and

18    still went forward.  I think that's contemptible.

19          MR. BRIER:  Your Honor, I don't understand

20    the rationale for, A, waiting such a long period of

21    time.  She's given the excuse for Flora Ness.  We've

22    now got that issue resolved, but I don't understand

23    the issue for not filing it in the Zloch case, other

24    than she believes that what Charles Franken did was

25    procedurally incorrect, and so, therefore, based on

Page 27

1  another Judge's ruling in a separate action, she

2  didn't have to file it in Judge Zloch's action.

3          THE COURT:  Let me ask you a substantive

4  question, Ms. Simpson, you do represent MGSI?

5          MS. SIMPSON:  At this point, yes, I do

6  represent MGSI.

7          THE COURT:  Okay.  Does MGSI have any

8  claims against Doctors Brody, Ness, and Schwartz,

9  their related practices, or Mrs. Ness?

10         MS. SIMPSON:  That have been filed in any

11 court pleadings?

12         THE COURT:  Do they have any --

13         MS. SIMPSON:  Yes.

14         THE COURT:  -- such claims?

15         MS. SIMPSON:  Yes.

16         THE COURT:  Yes.  Have those claims been

17 filed in any proceeding?

18         MS. SIMPSON:  No.

19         THE COURT:  Okay.  It seems to me, then,

20 that the discharge and release of such claims is an

21 issue that was raised in the global matters involving

22 the two debtors before me, Creative Desperation, Inc.

23 and Peter Letterese.

24         In one case, I am told, the order,

25 although -- your motion to vacate was filed more than

1  ten days after the order was entered.  Therefore,

2  Rule 9023 applying Rule 59 does not apply, and Rule

3  9024 applying Rule 60(b) does apply.

4          Under Rule 60(b), there are six specified

5  grounds under which one may seek reconsideration of

6  an order.  Which ground are you proceeding on in your

7  motion to vacate in the Creative Desperation case?

8          MS. SIMPSON:  It would be several.  Number

9  one, the order is void.

10         THE COURT:  Which provision of Rule 60(b)?

11         MS. SIMPSON:  I'm sorry, I'm giving you --

12  isn't there six, enumerated?

13         THE COURT:  Yeah.

14         MS. SIMPSON:  There was, I'll say,

15  misrepresentation on the part of the other party not

16  saying, hey, by the way, the due process case has a

17  specific -- oh, that's the due process case.  That

18  there's only a notice, and there's a question as to

19  whether MGSI is even a party plaintiff.  So you have

20  misrepresentation.  You have --

21         THE COURT:  Were you not -- I'm sorry,

22  you're asserting that Mr. Brier acted in fraud,

23  misrepresentation, or misconduct?

24         MS. SIMPSON:  Misrepresentation, not saying

25  that the due process case and the RICO case, that

1    MGSI may not have had a claim.   They kept saying they

2    did.   He kept saying that MGSI was a party plaintiff,

3    or had some interest in the case, when there was a

4    specific order, at least in the one, and arguably,

5    the same argument in the other case.

6              THE COURT:   Okay.   What other grounds

7    besides misrepresentation?

8              MS. SIMPSON:   May I look at the statute,

9    please?

10             MR. BRIER:   Here.   Here's the six bases and

11   my opposition.

12             MS. SIMPSON:   Thank you.   And that it would

13   be surprise.   Again, we didn't even realize.   We were

14   here on an emergency motion to compel them to -- to

15   compel MGSI to perform, what should have been an

16   evidentiary hearing, and wasn't.

17             Inadvertence on the two days, but I don't

18   even -- I'm not worried about that.   Your Honor, I

19   mean, with all due respect, would you say that

20   because it's filed within the ten days in the one

21   case, and outside the ten days in the other, that it

22   can be --

23             THE COURT:   Different rules apply.

24             MS. SIMPSON:   Okay.

25             THE COURT:   I'm trying to get you to

1   identify with specificity the rules under which you

2   are traveling.

3                MS. SIMPSON:  Okay.  So we have Number 4,

4   the judgment or the order is void, it can't be done.

5   Then Number 5, applying it prospectively is no longer

6   equitable, they're not a party.  And I'm sure I can

7   come up with some catch all.

8                THE COURT:  Well --

9                MS. SIMPSON:  Again, everything is done --

10               THE COURT:  Explain to me precisely why the

11   order is void.

12               MS. SIMPSON:  Rule -- let me get my rules.

13   I think it's Rule 20, Federal Rules of Civil

14   Procedure.  And Rule 14, if I'm not mistaken, talks

15   about joinder, permissive joinder of parties, and

16   Rule 20 is -- how you do it.

17               THE COURT:  Well, Rule 14 is third party

18   practice.  What does that have to do with this?

19               MS. SIMPSON:  No, no, then it's -- you

20   know, I had all this downloaded, and it wouldn't

21   print.  So let me find my rules, maybe it's 15.

22   Parties -- permissive joinder of parties is 20, and

23   then -- is it Rule 5?

24               THE COURT:  Ms. Simpson, this proceeding

25   was on -- not in an adversary proceeding, but as a

1   contested matter.

2           MS. SIMPSON:  Right.  And the rules --

3           THE COURT:  Does Rule 20 apply in contested

4   matters, Ms. Simpson?

5           MS. SIMPSON:  Yes.

6           THE COURT:  Show me where it applies,

7   because I'm reading Rule 9014(c), which says -- which

8   does not suggest it does.

9           MS. SIMPSON:  I thought that -- all right,

10  hold on, I looked at that.  Well, wait a minute,

11  we're not talking about this case, I'm sorry, we're

12  talking about -- okay, sorry, we're talking about in

13  the District Court.

14          THE COURT:  I am concerned about what

15  happened in this court, Ms. Simpson.

16          MS. SIMPSON:  But we're talking about the

17  void -- the fact that MGSI --

18          THE COURT:  You're arguing that my order is

19  void.

20          MS. SIMPSON:  Only because it can't be done

21  because of the District Court, because MGSI is not a

22  plaintiff or a party.

23          THE COURT:  I'm going to set this for an

24  evidentiary hearing to determine the authority of

25  Ms. Simpson to act for MGSI, and whether

1    Mr. Letterese, who was present in the courtroom, had

2    the authority to bind MGSI.

3              MR. BRIER:  Your Honor, my only note is

4    that Ms. Simpson has articulated today, and what I

5    perceive, even her motion being untimely in both

6    actions, but has articulated today some -- boldly,

7    surprise, fraud, void judgment, or void order.  None

8    of that is in her motion to vacate.

9              THE COURT:  Curious, isn't it?

10             MR. BRIER:  Yeah.  The only issue that's in

11   her motion to vacate -- so even if she had filed this

12   timely, even if her motion was filed timely, and she

13   can make an argument that it was filed timely with

14   the Court in one action, but not in the other, there

15   is no argument in the motion in either action that

16   sets forth any basis for the Court to vacate its

17   order on any of these six grounds.  There is not a

18   scintilla of argument in her motion.

19             Her motion to vacate, which is Docket

20   Number 398, merely sets forth that at the hearing,

21   she didn't have the authority to bind MGSI.  It

22   doesn't say that I committed fraud or

23   misrepresentation.  Candidly, she's an officer of the

24   Court, she was aware of the litigation that her

25   client had engaged in in some fashion or another.

1   She entered an agreement, and the spirit of the

2   agreement was not only to file the dismissals with

3   prejudice, but MGSI was going to let my people go.

4   It was a release, in essence.

5         Now she claims that I should have told her

6   that Judge Ungaro had entered an order dismissing

7   them.  She knew that the Ungaro action was dismissed

8   unilaterally or sua sponte by the judge without

9   prejudice.  She knew that going into the hearing.

10  She also claimed that it was an emergency -- or, no,

11  the first hearing was not an emergency hearing.  The

12  first hearing was a hearing on the objections on the

13  motion to dismiss, and on the trustee's motion to

14  approve the settlement that her client was in some

15  fashion a party to.

16        And so -- but let's get back to procedure.

17  Her motion to vacate argues nothing more than she

18  didn't have apparent authority.  There is no

19  articulated basis in the motion, pursuant to the

20  rules of this Court, that support fraud, mistake,

21  surprise, neglect, void judgment, or anything else.

22        And so on a procedural basis, her motion is

23  defective, it is fatally flawed, and should be

24  denied.

25        THE COURT:  Ms. Simpson.

1          MS. SIMPSON:  Your Honor, he's -- it wasn't

2   until probably three or four days ago when I really

3   started looking.  I pulled on October 31st the

4   dockets.  I had seen the stricken part on Ungaro on

5   the due process case.  So I knew MGSI was an

6   interested party, or a party in that case.

7          And he's right, I mean, he keeps doing

8   these things on an emergency basis.  60(b) says

9   reasonable time.  I brought it to everybody's

10  attention.  Even if it's on an ore tenus motion, I'll

11  be happy to put it in writing, or order a transcript,

12  and file the transcript in this case, if that's

13  necessary.  You can -- since it's within a reasonable

14  time, you know, if I need to, and I probably do.

15  He's right, put it in writing.  I'd be more than

16  happy --

17          MR. BRIER:  Your Honor, on an emergency

18  basis, that phrase keeps on raising itself.

19          MS. SIMPSON:  Excuse me, and by --

20          THE COURT:  Mr. Brier, Ms. Simpson wasn't

21  finished.

22          MR. BRIER:  I apologize.

23          MS. SIMPSON:  And by the way, the hearing

24  was on the motion to compel.  And it was brought on

25  an emergency basis, and the notice of hearing

1   specifically states it's non-evidentiary, and it was

2   heard in like three or four days.  And that was the

3   one for November 4th.

4         So it was done.  I'm not talking about the

5   first hearing was done on an emergency basis, that

6   was on the motion for sale, and that was at the time

7   that I made the representation.  Very shortly after

8   that, I e-mailed Mr. Brier, and I filed that e-mail

9   in this Court, as well, and said, hey, I made a

10  mistake, my clients didn't agree to it, didn't

11  authorize me to say it, I'm really sorry.

12        He immediately filed the emergency motion

13  to enforce stipulation.  That's what I'm referring to

14  that was heard on -- I believe it was November 4th or

15  7th, 7th.  And that was done on an emergency, and

16  that's the hearing where Your Honor said I had

17  apparent authority on a non-evidentiary hearing

18  notice on an emergency basis.

19        MR. BRIER:  Your Honor --

20        MS. SIMPSON:  And void orders are void.

21  If -- you can't do it, if there's no subject matter

22  jurisdiction.

23        THE COURT:  Wait, wait, wait, wait, you are

24  arguing two things in one sentence, so far as I can

25  tell.  The first is that you can't do it because your

1  client, MGSI, is not a party in the adversary

2  proceedings which you were directed, and stipulated,

3  and agreed that MGSI would dismiss.

4          MS. SIMPSON:  Post-petition claim.

5          THE COURT:  Ma'am, ma'am --

6          MS. SIMPSON:  Yes, sir.

7          THE COURT:  And secondly, you are

8  contending that I lack subject matter jurisdiction,

9  evidently, over your client who has appeared here?

10          MS. SIMPSON:  No, Your Honor, not that you

11  lack subject matter jurisdiction, that the District

12  Court lacks subject matter jurisdiction.  The

13  District Court doesn't have jurisdiction over them,

14  nor does it have subject matter jurisdiction over any

15  claims they may have.

16          So how can they dismiss them in that

17  action, if in the one case they are specifically

18  stricken by court order by the judge presiding in

19  that case?  They can't possibly have a cause of

20  action.  So any order that directs them to release or

21  dismiss the cause of action has to be void.

22          And in the second case, if it is done

23  exactly the same way, by notice, and it is improperly

24  done, and they are not a party because there has been

25  no amended complaint adding them as a party

1   plaintiff, or motion to amend to add them as a party

2   plaintiff, which was the issue that Judge Ungaro

3   picked up on, then there's no subject matter

4   jurisdiction of that Court, either, over MGSI or its

5   claims, not you.  I understand you have jurisdiction.

6   We've got an adversary that brings MGSI in.

7            THE COURT:  Okay.  Do you agree, folks,

8   that the issue is whether Mr. Letterese -- that for

9   purposes of determining the authority of Ms. Simpson

10  to act, that I either have to -- one, either has to

11  conclude that Ms. Simpson had actual authority from

12  MGSI, or that Mr. Letterese had authority to bind

13  MGSI?  Am I chewing on the wrong tree here?

14           MR. BRIER:  I would think, Your Honor, that

15  if a timely and properly set forth motion to vacate

16  had been filed by Ms. Simpson articulating the basis

17  under which she seeks to have this Court vacate that

18  order ruled upon verbally on November 6th and

19  submitted to writing and filed on November 10th, that

20  you would be correct, that the issue would be, let's

21  set the motion to vacate for evidentiary hearing.

22           However, Ms. Simpson's motion to vacate is

23  fatally flawed.  It does not set forth or articulate

24  any of the bases required under the Federal Rules of

25  the Bankruptcy Rules to argue that it should be

1  vacated.  She has come to this Court now, today, a

2  month and two days after Your Honor's ruling, and

3  under any circumstances, certainly beyond ten days of

4  the order in either action, and argued new grounds

5  for Your Honor to entertain her motion to vacate,

6  despite the fact they're neither included in her

7  motion to vacate, nor is there any affidavit or other

8  memorandum of law filed with this Court articulating

9  those grounds.

10            So I feel, Your Honor, it is the position

11  of my clients, that the motion is flawed, is

12  defective, is untimely, and should be denied as a

13  matter of course, or as a matter of law.

14            THE COURT:  Well, the -- and I'm

15  sympathetic to your argument, Mr. Brier, or your

16  position.  The only basis articulated in the motion

17  is a lack of apparent authority, which seems to me to

18  fall within the general rubric of Rule 60(b)(1) as

19  mistake, inadvertence, surprise, or excusable

20  neglect.  I'm not suggesting that it is any of those

21  things, but that that's the universe into which it

22  falls.

23            Do you, Ms. Simpson, agree that that is the

24  only issue framed by your motion to vacate, that I

25  need to consider the motion to vacate under Rule

1   60(b)(1)?

2         MS. SIMPSON:  Yes, Your Honor.

3         THE COURT:  Okay.  And, therefore, I do not

4   need to consider newly discovered evidence under

5   60(b)(2), or fraud, misrepresentation, or misconduct

6   under Rule 60(b)(3), or the judgment being void,

7   discharged, and achronistically inequitable and so on

8   under 60(b)(4) or 60(b)(5), or any other reason under

9   60(b)(6).

10        So we're proceeding under 60(b)(1), yes or

11  no?

12        MS. SIMPSON:  The only difference to that,

13  if we're going straight on the motion to vacate,

14  then, would be under the void argument, because I

15  filed with this Court several days ago the order from

16  Judge Ungaro, and the dockets in both cases.

17        THE COURT:  Well, the dockets don't tell me

18  anything, Ms. Simpson.  The pleadings might --

19        MS. SIMPSON:  Okay.

20        THE COURT:  -- but the issue is whether my

21  judgment is void, not upon whether something in

22  another --

23        MS. SIMPSON:  No.

24        THE COURT:  -- proceeding would be void.

25  If you're moving under 60(b)(3), then -- I'm sorry,

Page 40

1   60(b)(4), I guess it is, then we are -- then you

2   would have to be contending that my order is void,

3   and I don't think you're articulating that.

4           MS. SIMPSON:  Not in that motion, that is

5   correct, Your Honor.

6           THE COURT:  Okay.  So the only issue is

7   60(b)(1), applicable through 9024.  And the reason

8   I'm pinning you down on this is that I do not wish to

9   have any more amorphous hearings in which the basis

10  for the relief that's being sought or opposed is

11  insufficiently articulated so that none of us

12  understand what the heck is going on.  I've had

13  enough of that in this case.

14          Okay.  How much time do you think you need

15  to prepare for that hearing, Ms. Simpson and

16  Mr. Brier, on the issue of relief under 60(b)(1)?

17          MS. SIMPSON:  With the holidays coming up,

18  do we include those weeks, this time frame?

19          THE COURT:  Yes.

20          MS. SIMPSON:  Okay.

21          THE COURT:  I want to know how much -- when

22  you would be ready to try the case.

23          MS. SIMPSON:  Depositions?

24          THE COURT:  Ma'am, take it all into

25  account.

1           MS. SIMPSON:  Then I would say probably six

2    weeks.  We're in November, past mid January -- I'm

3    sorry, two months, mid January, getting past the

4    holidays.

5           THE COURT:  Well, mid January is more like

6    four weeks, the way I count.

7           MS. SIMPSON:  Oh, it's December.

8           THE COURT:  Yes, ma'am.

9           MS. SIMPSON:  I'm sorry, I have November in

10   my brain from the hearings.  Six weeks would be fine.

11          THE COURT:  Mr. Brier, is that enough time

12   to get ready for this?

13          MR. BRIER:  I have no objection to that,

14   Your Honor.

15          THE COURT:  Okay.

16          MR. BRIER:  I will also state, as a

17   stipulation that I'll offer on the record, if

18   Ms. Simpson's concern is either, A, my motion for

19   sanctions, or, B, that what the Court has ordered her

20   to do she feels is procedurally incorrect in the

21   Zloch and Ungaro matters, and can't be done, then I

22   will both agree to withdraw my motion for sanctions,

23   if she'll, in turn, provide my client with a release

24   of any claims that MGSI, whether formally or

25   informally, raised in those actions, because I

1    certainly believe that was the spirit of the

2    stipulation, and that was the purpose of Your Honor

3    ordering, and her agreeing to, the dismissals with

4    prejudice in those claims.

5              So if her concern is only, I am bound, and

6    this is her speaking, she is bound to refrain from

7    filing what the Court ordered her to file in those

8    actions because it would be procedurally improper,

9    then, fine, we've got another avenue for that.

10             MS. SIMPSON:  I'm not authorized for that

11   at all.  MGSI has given me absolutely zero

12   authorization on a settlement offer with Mr. Brier or

13   his clients, and as a matter of fact, has vehemently

14   stated that he has pre-petition, as well as

15   post-petition, I guess, causes of action.

16             THE COURT:  And who is the he to whom you

17   refer?

18             MS. SIMPSON:  Thomas Karas.

19             THE COURT:  You've actually met Mr. Karas?

20             MS. SIMPSON:  Yes.

21             THE COURT:  Oh, okay.  I had the sense that

22   he was the Charlie in Charlie's Angels.

23             MS. SIMPSON:  No, he's a dentist.  He's

24   alive.  Mr. Brier's clients met him on numerous

25   occasions, and he's been here.

Page 43

1              THE COURT:  I see.  Okay.

2              MR. BRIER:  So we go back to the six weeks,

3    Your Honor, as long as Ms. Simpson can coordinate

4    both her deposition, as well as Mr. Karas'

5    deposition, and I imagine Peter Letterese's

6    deposition within that time frame, I have no

7    objection -- and to the extent she believes, based on

8    Mr. Karas' deposition, that anyone else at MGSI had

9    authority to instruct her to do whatever she did, I

10   have no objection to that.

11             THE COURT:  When are Mr. Karas,

12   Mr. Letterese and you available for deposition,

13   Ms. Simpson?

14             MS. SIMPSON:  I'm here.  I'm available at

15   almost any given moment.  Mr. Letterese is here.

16   Mr. Karas, I would have to get ahold of him and find

17   out what his holiday schedule is, just in case he has

18   plans.

19             THE COURT:  Okay.

20             MR. BRIER:  Since MGSI is coming to this

21   Court seeking affirmative relief, I would request

22   that Mr. Karas appear here for his deposition.

23             THE COURT:  Any objection to that?

24             MS. SIMPSON:  No.  He wants to appear here,

25   as a matter of fact, for his deposition, and not

1  elsewhere.

2          THE COURT:  Okay.  I don't have my calendar

3  with me.  What do you have?  How long should we set

4  aside for -- how much time should we set aside for

5  this?

6          MS. SIMPSON:  Half a day.  I don't think it

7  would take a whole day, although I guess it would

8  depend on the number of witnesses.  If there --

9          THE COURT:  Well, you all know how many

10 witnesses there are going to be.

11         MS. SIMPSON:  His -- the burden of proof is

12 on the side trying to prove that there was apparent

13 authority, so he has the burden, initially, and it

14 would be on him to make his prima facia case.

15         So, I guess Mr. Brier really has to say how

16 long it would take him to do that.

17         THE COURT:  Well, Mr. Brier.

18         MR. BRIER:  Your Honor, I don't know if I

19 agree with that since she's moving to vacate claiming

20 that her, on the record representation to the Court,

21 was negated by the fact that she didn't have the

22 apparent authority to bind MGSI, but regardless, Your

23 Honor, I would think that a half a day would be

24 sufficient.  I will tell you that I anticipate

25 deposing, at a minimum, Ms. Simpson, and I'm thinking

1   off the cuff here, Ms. Simpson, Mr. Karas, Peter

2   Letterese, and possibly, Barbara Faucet, and they may

3   be witnesses that are called before the Court at that

4   hearing.

5           So, stating that, I would imagine -- and

6   without the benefit of knowing what they're going to

7   say, I would think that half a day might -- would be

8   sufficient.

9           MS. SIMPSON:  Your Honor, are we hearing

10  the motion to vacate, or are we actually hearing --

11          THE COURT:  We're hearing the motion

12  vacate.  That's the only motion that's before me.

13          MS. SIMPSON:  Oh, okay.  I'm sorry, I

14  thought you were actually going to grant the motion

15  and allow a hearing on whether or not there's

16  apparent authority.

17          THE COURT:  No, no --

18          MS. SIMPSON:  Okay.

19          THE COURT:  What's before me is the motion

20  to vacate, and the basis for the motion to vacate is

21  a factual assertion that there was no apparent

22  authority for you -- there was no authority for you

23  to act in the manner in which you did act.

24          MS. SIMPSON:  I'm sorry.

25          THE COURT:  So we will set it for January

1   28th at 9:30; does that work for you folks?

2              MS. SCHULTE:  Isn't that a holiday?

3              THE COURT:  January 28?

4              MR. BRIER:  That's a Thursday, Your Honor.

5   That works for me.  That's fine.

6              THE COURT:  Okay.  I want pretrial briefs

7   by the 22nd of January.  I want exhibit -- witness

8   and exhibit lists exchanged in the usual course.

9              In other words, I want a standard pretrial

10  order.  Mr. Brier, could you prepare one of those for

11  me?  Ms. Simpson sometimes doesn't get around to

12  filing pretrial orders.  We have another matter that

13  I have with Ms. Simpson that is a problem.

14             MS. SIMPSON:  It's not, Your Honor, we're

15  working it out.  There's not a -- and I apologize, I

16  actually did it.  I don't know why it didn't get

17  filed.

18             THE COURT:  In any event, I expect this to

19  be handled in a professional manner.  I want direct

20  testimony by affidavit.  Unless someone objects to

21  that, I will consider it in that fashion.  And I want

22  exhibit registers, and so on, provided by the 22nd.

23             MS. SIMPSON:  So, if I can just clarify,

24  because I apologize, I tend to maybe compartmentalize

25  a little too much, but the motion to vacate that's

1   filed before this Court, according -- is specifically

2   directed to the fact that there was no evidentiary

3   hearing held on the apparent authority issue.  So --

4          THE COURT:  No, ma'am.

5          MS. SIMPSON:  No, okay.

6          THE COURT:  Well --

7          MS. SIMPSON:  Yes, Your Honor.  With all

8   due respect, the motion to vacate says there should

9   have been an evidentiary hearing.  And you're now

10  granting an evidentiary hearing.  So, technically,

11  what we're actually going to trial on is whether or

12  not there was apparent authority, correct?

13         MR. BRIER:  Your Honor, there was no --

14         MS. SIMPSON:  Or should I do both?

15         MR. BRIER:  If I may, and I don't mean to

16  interrupt Ms. Simpson, but there was no argument or

17  motion filed by Ms. Simpson after your October 23rd

18  ruling, and there was no motion -- excuse me,

19  opposition memo filed in response to my emergency

20  motion to compel and for clarification that was set

21  for November 6th that articulated any apparent

22  authority issue on behalf of Ms. Simpson for MGSI.

23         And so therefore, at that hearing, it was a

24  motion for clarification where she raised for the

25  first time before this Court that she suddenly didn't

1   have authority to bind MGSI.  There's no pending

2   memo, or motion, or opposition to that at that

3   hearing.

4           MS. SIMPSON:  That's the hearing that

5   determined that the apparent authority existed.  It

6   didn't exist prior to that.  That's where it came up.

7           THE COURT:  Well, you didn't challenge what

8   you did on behalf of MGSI prior to that hearing.

9           MS. SIMPSON:  No, I did.  That's exactly

10  what I did.  I sent Mr. Brier, and I filed it with

11  this Court, an immediate, I can't do this, and --

12          THE COURT:  After you had already done it,

13  Ms. Simpson.

14          MS. SIMPSON:  Well, then that would take us

15  back to the initial October where I said I could do

16  it, but that goes back to the point, I filed --

17          COURT REPORTER:  Excuse me, Judge, I'm not

18  sure what Ms. Simpson said.

19          THE COURT:  I don't know, either.

20          MS. SIMPSON:  I just want to clarify if

21  we're going forward on both the motion to vacate

22  stating that under Florida law, an evidentiary

23  hearing was required, and that the only way to prove

24  agency -- apparent agency is to prove it through the

25  principal, then -- sorry, I lost my train of thought.

1    Okay.  At the non-evidentiary hearing on -- I think

2    you said it was the 6th, November 6th, which was on

3    the motion to compel the stipulation of the parties

4    from the prior hearing, at that hearing, that's when

5    Your Honor, again, found that I had the apparent

6    authority, without an evidentiary hearing having been

7    set, and without hearing from the principals.

8            So my motion to vacate is directed to the

9    portion of the sale order that requires MGSI to do

10   these things without having had the evidentiary

11   determination on the apparent authority.

12           THE COURT:  Well, Ms. Simpson, prior to

13   your motion -- prior to, or at the hearing on the

14   sale motion, you stipulated to things on behalf of

15   MGSI.

16           MS. SIMPSON:  Right.

17           THE COURT:  There would be no reason for me

18   to have a hearing at that point on whether you had

19   the authority to bind MGSI, because you were their

20   lawyer standing here in court representing their

21   position.  It's that order that you're seeking to

22   vacate.  The burden is on you to go forward.

23           MS. SIMPSON:  Okay.  On the motion -- so

24   we're hearing the motion to vacate.  That's fine.  As

25   long as I'm clear, and the record is clear for any

1   potential appeal, that it's the motion to vacate

2   that's being set for evidentiary hearing, and not the

3   lack of evidentiary hearing on the apparent authority

4   issue, or both.  If we're doing both at the same

5   time, I just want it to be clear.

6           So today would be treated as a preliminary

7   hearing with respect to the motion to vacate --

8   because I think I filed substantial case law that

9   says an evidentiary hearing is required.  There

10  wasn't one.  The notice of hearing specifically

11  stated it was non-evidentiary.  I'm just seeking an

12  evidentiary hearing on the apparent authority, and

13  that doesn't --

14          THE COURT:  Mr. Brier, does it --

15          MR. BRIER:  Your Honor, there is no case

16  law in her motion to vacate that says the Court was

17  required to hold an evidentiary hearing on November

18  6th.  More importantly --

19          MS. SIMPSON:  That's what every case says.

20          THE COURT:  Ms. Simpson --

21          MS. SIMPSON:  I'm sorry.

22          THE COURT:  -- your behavior, frankly, is

23  appearing to me to be unprofessional, and I don't

24  understand it.  You're just frustrated.

25          MS. SIMPSON:  I'm actually not very

1    frustrated, I'm just trying to clarify, because I've

2    handled, you know, issues before we have a motion to

3    vacate, and then you have the underlying issue, and

4    they're separate.  And if we're merging them together

5    in some way, shape or form, that's fine.  And like I

6    said before, perhaps I compartmentalize too much, but

7    I just -- I don't think there needs to be an

8    evidentiary hearing on whether an evidentiary hearing

9    is required.  If there does, that's fine.  I just

10   want to know that I'm doing both.  Does that make

11   more sense, maybe?

12          THE COURT:  Okay.  We are having an

13   evidentiary hearing on your motion to -- your partial

14   motion to vacate, or, presumably, a motion to

15   partially vacate, and it will consider the underlying

16   issue --

17          MS. SIMPSON:  Okay.

18          THE COURT:  -- of whether you had apparent

19   authority to bind MGSI.  If that issue is -- subsumes

20   the underlying -- your first motion, then that's

21   fine.

22          MS. SIMPSON:  Okay.

23          THE COURT:  Or your response to Mr. Brier's

24   earlier motion, that's fine.  I will make -- reach a

25   conclusion after that evidentiary hearing as to

Page 52

1  whether you had apparent authority.  And we'll see

2  where it goes.

3          MS. SIMPSON:  Okay.

4          THE COURT:  Okay?  Now, anything else we

5  need to do on that score?  I will be carrying

6  forward, Mr. Brier, your emergency motion for

7  contempt and sanctions.

8          MR. BRIER:  And I understand Ms. Simpson

9  doesn't have the authority to bind MGSI today, and I

10 leave that proposed stipulation open to her to confer

11 with her clients.

12         THE COURT:  Okay.

13         MR. BRIER:  My effort is to resolve this

14 matter in the manner in which we agreed to on October

15 23rd, not to waste her time, or the Court's time.

16         THE COURT:  Fair enough.  Okay.  That takes

17 care for today of, in Creative Desperation, the

18 emergency motion for contempt, Docket Entry 397, and

19 the partial motion to vacate, Docket Entry 398.

20         In the Peter Letterese case, it takes care,

21 for the moment, of the emergency motion for contempt,

22 Docket Entry 232, and the motion to vacate, Docket

23 Entry 233.

24         There are, in addition, some other motions

25 pending, and status conferences in the case.  I'd

1    like to consider now the motion for relief from stay

2    filed by Bridge Publications and the Church of

3    Scientology.

4              MR. PERLMAN:  Good afternoon, Judge.  This

5    is our motion, Docket Entry 364, filed in the

6    Creative Desperation case.  It was filed

7    approximately on October 21st.

8              I find myself in a unique situation,

9    because I don't recall ever technically seeking a

10   reset, but I am today, and let me explain why I'm

11   asking the Court's indulgence.  Although this has

12   been out there since October 21st, I was committed

13   Friday through Monday to a charitable fund raising

14   event.

15             Unfortunately, as a result of that, I

16   didn't get the response that was filed by the trustee

17   until Tuesday.  I'm not suggesting they didn't file

18   it timely, because they did.  I'm just saying that,

19   unfortunately, I was not in Monday in order to

20   receive it.

21             The case law is somewhat significant.  I

22   don't want to say confusing, but I think it's going

23   to take a while to work through the issues.  I don't

24   recall ever being in a contested motion where both

25   sides are relying on a case from the 11th Circuit

1    Court of Appeals.  Not that there's a conflict, but I

2    think Your Honor is going to have a unique

3    opportunity to possibly reconcile these two 11th

4    Circuit Opinions, and it's not something that I think

5    should be -- we should rush through.  It's not

6    something I would like to articulate without having

7    the opportunity of really dissecting the case law

8    that's been cited by the trustee.

9            And so I'm approaching the Bench and asking

10   for a continuance of this hearing so that I may

11   properly be prepared, again, that's on my being.  I

12   have suggested to the other side that we wait until

13   this thing closes.  I suspect some issues may be

14   resolved at that stage.  They have indicated they

15   would prefer it to be determined sooner, rather than

16   later.

17           Based on that, I leave it up to Your Honor,

18   but I did take the liberty of contacting your

19   calendar clerk who proposed three alternative dates

20   which I can announce when you advise me to.

21           THE COURT:  Okay.  Mr. Genovese.

22           MR. GENOVESE:  Your Honor, I can't help but

23   offer my profoundest apologies to the Court.  We

24   brought this matter to the Court for hearing, and I

25   believed, despite a strong proffer and strong

1   inclinations by the Court at the sale hearing, that

2   in announcing settlements, that we were saving the

3   parties time, expense, and frustration to the Court.

4          It would have been a lot easier on all of

5   these rulings, including the stay relief motion, to

6   just have gone forward that day, and let the chips

7   roll where they may have.  It would be far preferable

8   to where we've ended up.  Nonetheless, we are where

9   we are.

10          I, as a courtesy to Mr. Perlman, I don't

11  mind giving him ample opportunity to prepare for

12  hearing.  I would suggest the following to the Court:

13  The pendency of this motion, just like the MGSI

14  issue, what this addresses is, that despite the free

15  and clear sale order, despite the settlement approval

16  order, that the Church wants to have some ability, if

17  they prevail, to proceed against MGSI.  That's the

18  motion.  We think the case law is clear, but I'm not

19  arguing the case law today.

20          As the next payment becomes due, we don't

21  want this cloud, we don't want to roll this hearing

22  indefinitely.  It is pure legal argument.  I think it

23  can be heard.  I don't know what the specific dates

24  are.  Mr. Perlman has previously asked, let's see if

25  the next payment comes in, and then set the hearing.

1   No, we want to resolve this quickly.  We think

2   there's no merit to this argument.  We don't think

3   MGSI should debate about whether they have risk about

4   claims from the Church.  We'd like to resolve it as

5   soon as possible.

6          If the Court would want to do it on papers,

7   pleased to have proposed orders submitted.  I don't

8   think there's much in the way of argument needed.  We

9   just ask that it be handled as expeditiously as

10  possible.  We don't think it merits a lot of time,

11  because we think the case law is clear.

12         THE COURT:  What dates did you have in

13  mind, Mr. Perlman?

14         MR. PERLMAN:  The dates provided were

15  January 8th at 9:30, but I wasn't clear if that was a

16  motion calendar or special set.  I would submit that

17  we could probably get this done within an hour.

18  Alternatively, the 14th or 15th, which were wide

19  open.

20         MR. HOWELL:  The 14th is no longer wide

21  open.

22         THE COURT:  The 14th is now pretty well

23  locked up in the Arch Aluminum case.  How is the 8th

24  for you, Mr. Genovese?

25         MR. GENOVESE:  The sooner, the better.

Page 57

1                THE COURT:  Okay.  I would, Mr. Perlman,

2  like to have a brief beforehand so that I know where

3  you're coming from --

4                MR. PERLMAN:  Certainly.

5                THE COURT:  -- and that I can therefore be

6  prepared for the hearing, so let's do it on the 8th

7  of January at 9:30, then.

8                MR. GENOVESE:  Thank you, Judge.

9                THE COURT:  Thank you.  And Mr. Genovese,

10 if you'd give me an order -- or, I guess it's your

11 motion, Mr. Perlman.  You give me an order continuing

12 it, if you wouldn't mind, please.

13               MR. GENOVESE:  Thank you, Your Honor.

14               THE COURT:  Thank you.

15               MR. PERLMAN:  I think that would be it for

16 the status conference.

17               THE COURT:  And that --

18               MR. GENOVESE:  Your Honor, I'm going to

19 excuse myself.  I'm in the middle of a mediation,

20 so --

21               THE COURT:  Oh, okay.  Sorry.

22               MR. GENOVESE:  While this has been fun,

23 I --

24               THE COURT:  I'm sure, as it has for all of

25 us.  The status conference in the main case, is there

1   anything to report on status, or discuss on status?

2          MR. GRUHER:  No, Judge, other than the fact

3   that Mr. Genovese had already alerted the Court to

4   the fact that the first 250,000 has been paid.

5   Ms. Simpson did file a notice of compliance with the

6   order with respect to that payment.

7          So in terms of the main case, I think we're

8   okay.  The only other docket entry order that I think

9   was on for the calendar today is Docket Entry 29 on

10  the Creative Desperation -- oh, sorry, Tolz versus

11  MGSI litigation.  Your Honor, I think it should be

12  moved over to another status conference, and Mr.

13  Franken is before the Court for that one.  As Your

14  Honor recalls, you have been, at least, trying to

15  keep track of this adversary case, as it is part of

16  the overall settlement, assuming that Mr. Letterese

17  completes the payments, he will then have purchased

18  this particular action.

19         We would request, again, that if the Court

20  would be inclined, to just simply roll it over

21  probably until sometime after the payment would be

22  due in February.  I don't recall the specific date

23  that it's due, but it would make sense, and I know

24  Your Honor likes to keep track of these things, to

25  simply just issue a new order.  I can prepare that

Page 59

```
 1   order and upload it with the Court so --
 2             THE COURT:  The payment date that's due is,
 3   what, something like February 10th, 12th, something
 4   like that?
 5             MS. SIMPSON:  I believe it's 62 days from
 6   today.
 7             THE COURT:  I refuse -- I don't have that
 8   many fingers and toes.
 9             MR. GRUHER:  Judge, I apologize, I don't
10   have the date available, but we can pick a date in
11   probably early March.  I think that would cover us,
12   and, in fact, if Mr. Letterese complies, we might be
13   able to file something with the Court to even have
14   that removed from the calendar.
15             THE COURT:  Okay.  March 2nd?
16             MS. ROMERO:  In the afternoon, or is this a
17   special --
18             THE COURT:  Well, this is going to be a
19   pretty brief report.  It's either --
20             MR. GRUHER:  Correct.
21             THE COURT:  Okay.
22             MR. GRUHER:  Judge, I think you can put it
23   on your regular motion calendar, if you'd prefer.
24             THE COURT:  Okay.  March 2nd at 10:30, if
25   you'd give me an order to that effect, Mr. Gruher.
```

Page 60

1          MR. GRUHER:  Certainly, I'll take care of
2   that.

3          MR. PERLMAN:  March 2nd?

4          THE COURT:  March 2nd, yes.

5          MR. GRUHER:  At 10:30?

6          THE COURT:  Yeah.  And the only other
7   matter I have on the calendar is a fourth motion to
8   extend time by your client, Mr. Gruher, for --

9          MR. GRUHER:  That's correct, Your Honor.

10          THE COURT:  -- discharge or
11   dischargeability.

12          MR. GRUHER:  That's correct, and that was
13   filed in the Peter Letterese case, Docket Entry 238.

14          THE COURT:  Right.

15          MR. GRUHER:  I don't believe we have any
16   objections from Ms. Simpson with respect to that.
17   We've had a basic proposed order that we've been
18   using throughout the case, so if Ms. Simpson is
19   inclined, we can upload that one, as well, to the new
20   date.

21          THE COURT:  To the new date of February --
22   I'm sorry, March 2nd?

23          MR. GRUHER:  That's correct -- March 3rd,
24   Judge.  At least in the motion, it's requested for
25   March 3rd.

1          THE COURT:  Well, you get March 2nd.

2          MR. GRUHER:  Well, March 2nd it is.

3          THE COURT:  At 10:30, same time as the

4   other one, so they're traveling in tandem.

5          MR. GRUHER:  Oh, I'm sorry, Your Honor, you

6   wanted to roll this matter over?

7          THE COURT:  Yeah -- well, I'll -- or I

8   can -- you don't object to my granting it, do you,

9   Ms. Simpson?

10         MS. SIMPSON:  Granting the motion?

11         THE COURT:  The motion to extend time.

12         MS. SIMPSON:  Absolutely not.

13         THE COURT:  Okay.  Then I will grant it and

14  extend the time to March 2nd -- March 3rd, okay.

15         MR. GRUHER:  It's just what we asked for in

16  the motion, Your Honor.

17         THE COURT:  Okay.

18         MR. GRUHER:  And I'll go ahead and take

19  care of uploading that order.

20         THE COURT:  Thank you.  Now, is there

21  anything else we need to do in either --

22         MR. PERLMAN:  That's alright.

23         THE COURT:  No, no, go --

24         MR. PERLMAN:  I didn't know if you were

25  done speaking.  I just had an inquiry, and directed

1   it to Trustee Osborne.  I know he's got some coverage

2   here today.  I just asked to verify the source of the

3   funds, if we can just get a copy of either the check,

4   or the wire transfer, to confirm where the money came

5   from.  This is counsel's first appearance in this

6   case, unfortunately for him, fortunately for

7   Mr. Osborne.

8           So what I just suggested is maybe he'll

9   just agree to provide whatever the information is on

10  the controlling document.  If it's a wire, who the

11  issuing account was from, or if it's a check, the

12  name of the account, something like that.

13          MS. SIMPSON:  Your Honor, we complied with

14  the order.

15          THE COURT:  Is there anything in the order

16  that requires that?

17          MS. SIMPSON:  No.

18          THE COURT:  Mr. Perlman?

19          MR. PERLMAN:  The order says that he's

20  required to disclose, to the extent that the source

21  is other than the lender identified at his deposition

22  taken earlier in that month.

23          MS. SIMPSON:  And --

24          MR. PERLMAN:  I just don't know -- I just

25  think that we're all better off knowing that it's not

1   from someone like Mr. Rothstein.  I know that's an

2   extreme example, and I meant to do so intentionally.

3   I just want to verify that it's from the lender,

4   that's all.

5            THE COURT:  Mr. Gruher.

6            MR. GRUHER:  Judge, I was about to stay out

7   of this one, but I recall at the last hearing

8   standing at the podium with Mr. Perlman, and Your

9   Honor was very insistent that you wanted that

10  language, and all the Ts crossed and the Is dotted

11  that day before anyone left, which we sat there, and

12  did.  I think that Mr. Letterese has complied with

13  the spirit and intent of the order, and now I think

14  Mr. Perlman is going back to the well now and saying,

15  well, I want something more.

16            The fact of the matter is, I know of no

17  information out there that would suggest that the

18  funds came other than from what Mr. Letterese had

19  already testified to with Mr. Perlman.

20            Again, Judge, the only reason I'm saying

21  it --

22            THE COURT:  Did the funds come from the

23  source identified in the deposition?

24            MS. SIMPSON:  Yes.

25            THE COURT:  Okay.  Is there harm in saying

1  that?

2         MS. SIMPSON:  Actually, it's not -- that's

3  not what he asked for.  He just asked for proof of a

4  wire transfer.  I filed a notice of compliance with

5  the court order.  Everything is in compliance with

6  the court order.  He's asking for more, and we fought

7  this out already.

8         THE COURT:  Okay.  Mr. Perlman, do you

9  contend that there's something consistent with the

10  order that is noncompliant with the terms of the

11  order in respect of the funds?

12         MR. PERLMAN:  No, not at all.

13         THE COURT:  Okay.

14         MR. PERLMAN:  Although I think it was quite

15  telling when you asked Mr. Gruher in the affirmative

16  if he can identify the source of the funds.  The

17  answer is no.  The only person that could verify the

18  source of funds would be the sender, or Mr. Osborne,

19  who received the payment.  There's been issues

20  throughout this case, and I'll be kind and just say,

21  as to the candidness towards this Court as to facts.

22  This would not be the first time that we will leave

23  and later determine it may not be as accurate as

24  possible.  I'll leave it to Your Honor, because I

25  think you were equally inquisitive to verify the

Page 65

1    source of the funds.

2          If you want to put it off for another day,

3    that's fine.  I'm okay with that.  I just felt it was

4    appropriate to shore that issue up as we continued on

5    this path.

6          THE COURT:  If you conclude, Mr. Perlman,

7    after looking at stuff, that I need to do more, file

8    a motion and I'll certainly consider it.

9          MR. PERLMAN:  I'll do so.  Thank you.

10          THE COURT:  Now, in respect of the hearing

11    that's on January 8th, when am I going to have your

12    brief, Mr. Perlman?

13          MR. PERLMAN:  I penciled in there, on my

14    own calendar, the 5th or 6th.

15          THE COURT:  The 5th or 6th --

16          MR. PERLMAN:  Tuesday or Wednesday.

17          THE COURT:  Yeah, if I could have it by the

18    5th, that would be very helpful.

19          MR. PERLMAN:  You will.

20          THE COURT:  Okay.  Thank you.  If you'd

21    stick that in the order.

22          MR. PERLMAN:  My pleasure.

23          THE COURT:  Ms. Simpson.

24          MS. SIMPSON:  Yes, one question.  The

25    motion for sanctions, is that just going to float out

1    there, or can we have it set for an evidentiary

2    hearing, even if it's, you know, two months or a

3    month-and-a-half down the road or something?

4           THE COURT:  Well, I think what I said is

5    that the motion for sanctions would roll with the

6    evidentiary hearing, and that I wouldn't be

7    considering the sanctions themselves, but just

8    whether -- I would continue those hearings without

9    the intent that I would rule on them at the time of

10   the evidentiary hearing on authority, but that there

11   is no purpose in having a hearing on those until

12   after the authority question is determined.  Do you

13   think that's fair?

14          MS. SIMPSON:  Okay.

15          THE COURT:  So my intent was to roll those

16   forward with the evidentiary hearing.

17          MS. SIMPSON:  But not to actually hold an

18   evidentiary hearing on the sanctions itself?  If, in

19   fact, there was apparent authority, then you would

20   set the sanction order?  I want --

21          THE COURT:  That would be my expectation.

22   Mr. Brier, is that a reasonable way to proceed?

23          MR. BRIER:  I have no objection to that,

24   Your Honor.

25          THE COURT:  Okay.

1           MR. BRIER:  I think if Your Honor finds

2    that there was apparent authority, then Your Honor --

3           THE COURT:  Then I consider what happens

4    if --

5           MR. BRIER:  Correct, correct.

6           THE COURT:  Okay.

7           MS. SIMPSON:  Okay.  Thank you.

8           THE COURT:  I try not to make a decision on

9    things unless I have to.  Okay.  Is there anything

10   else we need to do in these cases?  Ms. Schulte.

11          MS. SCHULTE:  Your Honor, I just wanted to

12   put my name for the record, Nemia Schulte on behalf

13   of the debtor, Creative Desperation.  Thank you.

14          THE COURT:  Thank you.  Anything else,

15   folks?  Okay.  Enjoy the holidays, I'll see you all

16   in January.

17          (Thereupon, the hearing was concluded.)

18

19

20

21

22

23

24

25

1                           CERTIFICATION

2

3     State of Florida:

4     County of Dade:

5

6           I,  BONNIE  TANNENBAUM,  Shorthand Reporter

7     and Notary  Public  in  and  for the State of Florida

8     at Large,  do  hereby  certify  that  the  foregoing

9     proceedings  were  taken  before  me at  the date and

10    place  as  stated  in  the caption  hereto on Page 1;

11    that the  foregoing computer-aided transcription is a

12    true record of  my  stenographic  notes taken at said

13    proceedings.

14          WITNESS my  hand this 30th day of December,

15    2009.

16

17    _____

                      BONNIE  TANNENBAUM

18              Court Reporter  and Notary Public

          in and for the State of Florida at Large

19            Commission Number:  DD 567145

                  Expires:  June 22, 2010

20

21

22

23

24

25